**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| TERRY LARSON and JAYNE LARSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:20-CV-250-PPS-JPK |
| | ) | |
| DAVIDSON TRUCKING, INC., and GARY | ) | |
| EIDT, individually and as an employee, agent, | ) | |
| and/or servant of DAVIDSON TRUCKING, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion To Reconsider And For Clarification [DE 36] ("Motion to Reconsider"). The Motion to Reconsider seeks reconsideration of the Court's February 10, 2023 Order [DE 35], which denied Defendants' Motion To Compel Report Pursuant To Federal Rule Of Civil Procedure 35(b)(3) [DE 26] ("Motion to Compel"). For the reasons below, the Motion to Reconsider is denied. The Court notes, however, that there is very little case law directly on point. The standard for reconsideration is narrowly drawn to ensure litigation is resolved in an expedient manner and to preserve judicial resources. While that standard, as discussed below, is not one that Defendants satisfy, nothing discussed herein should be taken to suggest Defendants' motion was improper. Seeking reconsideration was entirely appropriate in this case, although the Court will ultimately deny Defendants' motion.

### INTRODUCTION

Federal Rule of Civil Procedure 54(b) states that a court's non-final order or other decision "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Galvan v. Norberg*, 678 F.3d 581, 587 n.3

(7th Cir. 2012) ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment"). In *Neurology & Pain Mgmt. Assocs., P.C. v. Bunin*, No. 3:17-CV-35-JD-MGG, 2022 WL 4379211 (N.D. Ind. May 31, 2022), the court set forth the standard applicable to a Rule 54(b) motion for reconsideration:

> Motions for reconsideration serve valuable, but limited functions: correcting manifest errors of law or fact or presenting newly discovered evidence. A manifest error is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent. As such, motions for reconsideration are not to be used to advance arguments that the Court has already addressed and decided. Indeed, the court's orders are not mere first drafts, subject to revision and reconsideration at a litigant's pleasure.

*Id.* at *2 (internal quotation marks and citations omitted); *see also Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011) ("It is well established that a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013), *cited with approval in First Specialty Ins. Co. v. Supreme Corp.*, Case No. 3:12-cv-186-JD, 2018 WL 4680015, at *2 (N.D. Ind. Sept. 28, 2018).

As the basis for their Motion to Reconsider, Defendants essentially advance the same arguments they made in their two briefs in support of their Motion to Compel. Primarily, Defendants argue that Plaintiffs' Rule 45 subpoena for documents in anticipation of deposing Defendants' testifying expert witness, Dr. Gibson, constituted a request for Defendants' examiner's report under Federal Rule of Civil Procedure 35(b)(1). If Defendants' characterization of the Rule 45 subpoena as a "request" under Rule 35(b)(1) is appropriate, then Defendants would be entitled to receive from Plaintiffs "like reports of all earlier or later examinations of the same

condition." Fed. R. Civ. P. 35(b)(3). If this "reciprocity" requirement in Rule 35(b)(3) applies, then Plaintiffs would be required to provide Defendants with a report of their non-testifying expert consultant, Dr. Rothke, whose opinions Plaintiffs claim are privileged under Rule 26(b)(4)(D).[1] Defendants also argue, as they did before, that Rule 35 requires Plaintiffs to disclose Dr. Rothke's opinions *even without* Plaintiffs having made a "request" for Dr. Gibson's report under subsection (b)(1) of the rule, on the theory that the policy behind Rule 35 dictates mutual disclosures where the injured plaintiff has been examined by multiple physicians.

## DISCUSSION

The Court first notes that Defendants do not contest Plaintiffs' representation in the briefing that Dr. Rothke has *not* prepared a report. Therefore, Defendants' Motion to Compel can be, and is, denied on the ground that the Court cannot compel a report that does not exist. Defendants, though, assert that the Court has the power under Rule 35 to compel Dr. Rothke *to prepare* a report. Defendants assert this new argument is supported by *Salvatore v. Am. Cyanamid Co.*, 94 F.R.D. 156, 158 (D.R.I. 1982), a case they failed to cite in either of their two briefs in support of their Motion To Compel. *Salvatore* was available to Defendants at the time of their original Motion to Compel, so Defendants may not raise it in support of a new legal theory on a motion for reconsideration. *See Thomollari v. CMRE Fin. Servs., Inc.*, No. 17-CV-533, 2017 WL 6805639, at *2 (E.D. Wis. Oct. 27, 2017) ("a motion for reconsideration is an improper vehicle to introduce new legal theories." (citing *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986))).

In any event, Defendants concede that *Salvatore* involved a different issue than the one before this Court: whether a court can compel a Rule 35 examiner to prepare a report under

---

[1] The privilege protects from discovery "facts known or opinions held by an expert who has been retained or specially employed … in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D).

subsection (b)(1), *not* whether a court can compel the examined party's expert to prepare a report under subsection (b)(3). According to Defendants, "[a]lthough the roles are reversed the logic remains sound." [DE 36 at 12]. But for at least two reasons, the Court need not decide whether the same rule should apply under subsections (b)(1) and (b)(3): first, as noted, Defendants failed to raise the issue in the briefing on the Motion to Compel; and second, even in their Motion to Reconsider, Defendants fail to develop the argument beyond the conclusory assertion that the "logic" of *Salvatore* applies equally to the situation before this Court. *See Est. of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

In any event, the facts in *Salvatore* are distinguishable. *Salvatore* involved the court's authority to compel a Rule 35 examining physician to provide the examined party with a written report upon the examined party's request even though the defendant had decided not to call the physician as a witness and the physician had not prepared a report. 94 F.R.D. at 158. In wrestling with that issue, the court *distinguished* between Rule 35's treatment of the examined party and its treatment of the examining party and the policies behind that differing treatment. *Id.* Specifically, the court noted that Rule 35 grants the examining party the unusual right to "utilize the coercive power of the Court to invade the examined party's privacy." 94 F.R.D. at 158. But, the court explained, "[c]ertain consequences attach to the use of th[at] power." *Id.* Among those consequences is the "requirement that the examining party must provide the examined party with a copy of the physician's report, whether or not the examining party intends to call the physician at trial" if a report is requested. *Id.* The court suggested (without deciding) that exclusion of trial testimony would likely be a sufficient sanction (as opposed to compelling the preparation of a report) if it was *the examined party's own physician* who failed to provide a report if one were required by Rule 35(b)(3). The court stated, however, that exclusion of testimony was *not* a

4

sufficient sanction for failure to deliver a required report by a Rule 35 examiner, and that, instead, the court could compel the delivery of the Rule 35 examiner's report due to the Rule 35 examiner's special status. As the court explained, because the Rule 35 examination depends upon the court's coercive power,[2] "*[u]nlike plaintiff's own doctors*, [the Rule 35 examiner] is, in some sense, an 'officer of the court' performing a non-adversary duty." *Id.* (internal quotation marks and citation omitted). Given that the *Salvatore* court expressly distinguished the situation at hand when it ruled that it could compel preparation of a report by the Rule 35 examiner (which is not the situation before this Court), it is hard to see how that case supports Defendants' arguments.[3]

Apart from arguing that the Court has the authority to compel a report by Dr. Rothke, Defendants' Motion to Reconsider objects to the Court's findings and conclusions in its prior order that Plaintiffs did *not* waive their Rule 26(b)(4)(D) privilege for Dr. Rothke. The consulting expert privilege is subject to two exceptions, only one of which Defendants argue applies here—the exception for discovery "as provided in Rule 35(b)." Fed. R. Civ. P. 26(b)(4)(D)(i). Thus, the issue boils down to whether Rule 35(b) operates in some fashion as a waiver of Plaintiffs' privilege under Rule 26(b)(4)(D). Defendants argue that it does, because Plaintiffs "requested " a copy of

---

[2] Like the plaintiff in *Salvatore*, Plaintiff Larson here agreed to submit to a Rule 35 examination by Defendants' medical expert, Dr. Gibson, without being ordered to do so by the Court. But as the *Salvatore* court explained, the plaintiff's "agreement was made with the knowledge that defendant could have applied for an order under Rule 35(a). That the court's coercive power lies in the background of every agreement to submit to a medical examination is recognized by Rule 35(b)(3), which provides that Rule 35(b)(1) applies when the parties agree to an examination." 94 F.R.D. at 158 n.2.

[3] The Court also notes that the *Salvatore* court ordered the defendant to pay the Rule 35 examiner's fee for preparing a report. 94 F.R.D. at 158. Defendants' Motion to Reconsider asks the Court to compel a report but does not say whether Defendants would agree to shoulder the fee for the report that would likely have to be paid to the non-testifying expert witness.

Dr. Gibson's report under Rule 35(b)(1), thereby triggering the waiver found in subsection (b)(4) of the rule.[4]

The Court's prior order denying Defendants' Motion to Compel[5] examined the requirements of Rule 35(b) before concluding that, by issuing the Rule 45 subpoena, Plaintiffs did not waive the privilege for non-testifying experts such as Dr. Rothke. The Court reasoned that, because Defendants designated Dr. Gibson as a testifying expert witness, Plaintiffs obtained a copy of his report *not* by making a "request" under Rule 35 but because of the mandatory disclosure requirements of Rule 26(a)(2)(B). The Motion to Reconsider contests this finding, arguing that "there are material issues of fact and law Defendants believe were either misinterpreted or erroneously applied [by] the Court." [DE 36 at 1]. An argument that the Court "misinterpreted or erroneously applied" the facts and law, however, does not satisfy the "manifest error" standard applicable to motions for reconsideration, which, as previously stated, means "the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Neurology & Pain Mgmt,. Assocs., P.C.*, 2022 WL 4379211, at *2.

Even if the Court were to permit Defendants' attempt to re-argue issues previously resolved, nothing they say in support of reconsideration merits a different outcome. According to Defendants, the Rule 45 subpoena issued by Plaintiffs in anticipation of Dr. Gibson's deposition amounted to at least a "de facto 'request' for Dr. Gibson's report under Rule 35(b)(1)." [DE 36 at 5]. Defendants assert that the Court's previous order denying Defendants' Motion to Compel

---

[4] *See* Fed. R. Civ. P. 35(b)(4) ("By requesting and obtaining the examiner's report, or by deposing the examiner, the party examined waives any privilege it may have … concerning testimony about all examinations of the same condition.").

[5] The Court's prior order is reproduced at the Addendum attached to the end of this opinion and order.

acknowledged that the Rule 45 subpoena could be interpreted as such. [DE 36 at 5-6]. But the Court found only that the subpoena could be construed as having requested the production of Dr. Gibson's final report, which is not the same as construing the subpoena as a "request" for the report under Rule 35(b)(1) (whether characterized as "de facto" or otherwise). Instead, the Court found that Plaintiffs had a right under Rule 26(a)(2)(B)—independent of Rule 35—to demand that Defendants turn over a copy of Dr. Gibson's report. Accordingly, the Court concluded that the Rule 45 subpoena can be viewed only as a demand that the report already required by Rule 26(a)(2)(B) be provided before the scheduled deposition date. *See* Fed. R. Civ. P. 26(b)(4)(A) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.").

As before, Defendants insist that even though Plaintiffs had the right under Rule 26(a)(2)(B) to a report from Dr. Gibson because he was designated as a testifying expert, Plaintiffs' "exercis[e] [of] that right constitutes a 'request' for purposes of Rule 35(b)(1)." [DE 36 at 5]. But Defendants offer no explanation for how or why the exercise of a right under Rule 26(a)(2)(B) magically transforms into a "request" under Rule 35(b)(1) other than the *ipse dixit* of the sentence. As the Court pointed out in its previous order, Defendants cite no legal authority to support their assertion that, by asserting their right to receive a Rule 26(a)(2)(B) report, Plaintiffs made a "request" under Rule 35(b). Moreover, that assertion contradicts subsection (b)(6) of Rule 35, which states that "[t]his subdivision does not preclude obtaining an examiner's report or deposing an examiner under other rules," Fed. R. Civ. P. 35(b)(6). The advisory committee notes to subsection (b)(6) explain that the subdivision was added to "make[] clear that reports of examining physicians are discoverable not only under Rule 35(b) but under other rules as well," and that "[i]f

the report is unprivileged and is subject to discovery under the provisions of rules other than Rule 35(b)—*such as Rules* 34 or *26(b)(3) or (4)*—the discovery should not depend upon whether the person examined demands a copy of the report." *Id.*, advisory committee notes, 1970 amendment (emphasis added) (citations omitted).

Defendants both ignore this clear language contradicting their argument *and* try to read limitations or qualifications into it that do not exist. Thus, Defendants continue to assert that Dr. Gibson's role as a Rule 35 examiner overrides his role as a testifying expert, and somehow excuses him from the expert report requirement of Rule 26(a)(2)(B), which would mean that the only way Plaintiffs could have obtained Dr. Gibson's report was by "requesting" it under Rule 35(b)(1), triggering the reciprocity requirement of Rule 35(b)(3). They do not provide any legal authority for asserting that Dr. Gibson was excused from having to provide an expert witness report under Rule 26(a)(2)(B) because of his Rule 35 examiner's status; yet they assert the issue is "unsettled at best." [DE 36 at 5]. The Court cannot conclude the issue is "unsettled," however, when subsection (b)(6) of Rule 35 unambiguously states that its requirements do not preempt other rules such as the expert witness disclosure rules in Rule 26, particularly given that Defendants cite no rule language, supporting case law, or legal authority indicating a contrary interpretation. Defendants further ignore that they themselves acted at all times as if they had a duty to produce a report by Dr. Gibson under Rule 26(b)(4)(A) *independent of* whether Plaintiffs made a request under Rule 35. This is shown by the facts that (1) they delivered Dr. Gibson's original expert report to Plaintiffs as part of their expert witness disclosures before they requested to have Dr. Gibson conduct a Rule 35 examination; and (2) they provided Plaintiff with a copy of what they called "Dr. Gibson's final report" on April 14, 2022, before they responded to Plaintiffs' Rule 45 subpoena. Indeed, Defendants admit that they provided Plaintiffs with Dr. Gibson's report

"pursuant to both a Rule 45 document subpoena *and in compliance with Rule 26(a)(2)(B)."* [DE 36 at 2 (emphasis added)].

Later in their brief, Defendants suggest the Court can infer that Dr. Gibson was exempted from the expert witness disclosure requirements of Rule 26(a)(2)(B) because subsection (b)(6)'s non-exclusivity rule somehow does not apply. Therefore, even though Defendants have identified their Rule 35 examiner as a testifying expert witness in the case, they claim the only way for Plaintiffs to have obtained his expert report was by making a "request" under Rule 35. In further development of this argument, Defendants assert that the 1970 committee notes to Rule 35(b)(6) demonstrate that subsection (b)(6) was "not intended to allow Plaintiff to obtain copies of Defendants' Rule 35 examiner through means other than Rule 35(b)(1)," but instead was intended only "to confirm that Rule 35(b) was not the only vehicle by which *a defendant could obtain Plaintiff's medical records.*" [DE 36 at 9 (emphasis added)]. Defendants contend that their interpretation of subsection (b)(6) is supported by Wright & Miller, 8B FED. PRAC. & PROC. CIV. § 2237 (3d ed. 2022 version). But the Court has reviewed § 2237 (both the current 2023 updated version and the 2022 version cited by Defendants), and is unable to find any language in that commentary that supports Defendants' argument that subsection (b)(6) only applies to an examining party's right to obtain an examined party's own medical records. This is not surprising given that the language of Rule 35(b)(6) does not refer to an examined party's medical records; it expressly refers to using "other rules" to obtain *the examiner's report*, as the Court held Plaintiffs did here when they obtained a copy of Dr. Gibson's report. *See* Fed. R. Civ. P. 35(b)(6) ("This

subdivision does not preclude obtaining *an examiner's report* or deposing an examiner under other rules.") (emphasis added).[6]

It is true that Wright & Miller discuss the issue of whether the examined party may prevent discovery of his or her own medical reports simply by not requesting a copy of the Rule 35 examiner's report. Wright and Miller argue that subsection (b)(6) applies to that situation as well, allowing the examining party to obtain the examined party's own reports under other rules.[7] But

---

[6] Defendants' argument that subsection (b)(4) is somehow limited to the situation where a defendant seeks to obtain the plaintiff's own medical records is found in the first of four paragraphs of indented and italicized text at page 9 of Defendants' Motion to Reconsider. The indented paragraphs end with a citation to Wright & Miller, § 2237, yet not all of the text appears to come from that source. In fact, the crucial portion appears to be attorney argument, not a direct quote from Wright & Miller.

[7] This discussion is found in the second through fourth paragraphs of indented/italicized text at page 9 of Defendants' Motion to Reconsider, which quote Wright & Miller as follows:

> [B]oth the exchange–of–reports provision of Rule 35(b)(1) and the waiver–of–privilege provision of Rule 35(b)(4) are dependent on a request by the examined party for a report of the examination. If that party makes no request, he or she cannot be required to provide copies of his or her own reports and the waiver provision of Rule 35(b)(4) does not come into play. This is true even though the court on its own motion ordered that this party be given a report of the examination 16 or the party making the examination is willing to give a report. But can the examined party, by refusing to request a report, bar his or her opponent from having discovery in other way of his or her own medical reports, assuming that they are not privileged or otherwise exempt from discovery? The better view was that he or she could not and that Rule 35(b) was not preemptive of other discovery devices, as explained by the Third Circuit in 1965:
>
> > Acceptance of the position advocating Rule 35(b)(1) procedure as the exclusive method by which medical reports are to be exchanged would substantially herald a return to pre–discovery days, even in circumstances similar to the instant case, where a party defending against a personal injury claim has been able to examine for himself his allegedly injured adversary. Absent the presence of other barriers to full discovery, a party involved in

Defendants' reliance on this portion of the Wright & Miller excerpt for arguing that subsection (b)(6) does not allow Plaintiff to obtain a copy of Dr. Gibson's report through Rule 26(a)(2)(B) rather than Rule 35(b)(1) is misplaced. Nothing in Wright & Miller's discussion indicates that subsection (b)(6)'s non-exclusivity provision applies *only* to the specific situation of a defendant seeking to obtain a plaintiff's own medical records. And, in fact, subsection (b)(6) on its face is not so limited. As discussed above, the language of subsection (b)(6) speaks directly to the factual scenario here of the examined party seeking the examiner's report under a provision of another rule, rather than under Rule 35. In short, subsection (b)(6) expressly permits Plaintiffs to obtain a copy of Dr. Gibson's report through the mandatory disclosure requirements of Rule 26(a)(2)(B) without triggering the reciprocity requirement of Rule 35(b)(3) or the waiver in Rule 35(b)(4) through a "request" under Rule 35(b)(1).

Defendants also appear to be arguing that the quoted excerpt from Wright & Miller supports their separate argument that subsection (b)(6) permits Defendants to obtain a report by Plaintiffs' own examiner, Dr. Rothke, even if Plaintiffs never made a "request" for Dr. Gibson's report under Rule 35. Specifically, Defendants rely on the comment in the Wright & Miller excerpt that an examined party's failure to "request" a copy of the examiner's report should not block

------

litigation should have the maximum opportunity for discovery open to him. Merely because he has been able to medically examine his adversary, that adversary's decision not to request a copy of the report of his examination under Rule 35(b)(1) should not necessarily bar discovery, under Rule 34, or otherwise, by the defending party, of his adversary's personal medical reports.

This view was accepted in the 1970 amendments, and is embodied in what is now the second sentence of Rule 35(b)(6).

Wright & Miller, § 2237 (footnotes omitted) (quoting *Buffington v. Wood*, 351 F.2d 292, 296–297 (3d Cir. 1965)).

discovery of the examined party's own examination reports. But Defendants ignore the preface to that entire discussion, in which Wright & Miller state that they "assum[e] that [the examined party's own reports] *are not privileged or otherwise exempt from discovery*." 8B FED. PRAC. & PROC. CIV. § 2237 (emphasis added). Dr. Rothke's report is in fact privileged under Rule 26(b)(4)(D). It thus falls outside the assumption on which the commentary's discussion cited by Defendants is based.[8]

The Court is not inclined to discuss in any detail the cases cited in Defendants' Motion to Reconsider. With two exceptions, those cases were addressed in the Court's previous order. The first exception is *Salvatore*, which the Court discussed earlier in this opinion. The second is *Waggoner v. Ohio Central Railroad, Inc.*, 242 F.R.D. 413 (S.D. Ohio 2077). But because Defendants did not cite *Waggoner* or present any analogous argument in the briefing on their Motion to Compel, the Court need not consider it here, as discussed previously with regard to the *Salvatore* case. In any event, *Waggoner* addresses an entirely different issue than the one before the Court—i.e., whether a Rule 35 examination is governed by the deadlines imposed for Rule 26(a)(2) disclosures. *Waggoner* held that "a substantial argument can be made that the Rule 35 procedure is independent of the Rule 26(a)(2) disclosure regime." *Id.* at 414; *see also Gibson v.*

---

[8] Defendants assert that the report is not privileged under Rule 26(b)(4)(D) because that rule states that the privilege does not apply to reports required to be produced under Rule 35. *See* Fed. R. Civ. P. 25(b)(4)(D)(i). But that argument is a non sequitur. Defendants do not—and cannot—cite any language in Rule 35 that affirmatively requires Plaintiffs to produce their own examiner reports in the absence of a "request." Instead, Defendants cite subsection (b)(6)'s non-exclusivity provision. But subsection (b)(6) does not create an affirmative duty to disclose, which would override the privilege of Rule 26(b)(4)(D) as stated in subsection (D)(i) of Rule 26(b)(4). Indeed, rather than overriding the privilege in Rule 25(b)(4)(D), subsection (b)(6) affirms the *enforceability* of that privilege. *See* Fed. R. Civ. P. 35(b)(6), 1970 advisory committee report (stating that discovery of the examined party's own reports does not depend on a request for the examiner's report being made *so long as* the party's own reports are "*unprivileged*" and "subject to discovery under the provisions of rules *other than Rule 35(b)*") (emphasis added).

*Jensen*, No. 8:16CV296, 2017 WL 2982952, at *2–3 (D. Neb. July 12, 2017) ("the requirements of the timing of expert disclosures as governed by Rule 26, and the timing of a request for an examination under Rule 35 generally operate independent of one another" (citing *Perez v. Viens*, No. 4:09cv3206, 2011 WL 855673 (D. Neb. March 8, 2011) (citing *Waggoner*)). Defendants rely on this "independent of each other" language to challenge the Court's previous conclusion that Plaintiffs had no reason to make a Rule 35 request for Dr. Gibson's report because they were entitled to receive it pursuant to Rule 26(a)(2)(C).[9] Although not entirely clear, the argument seems to be that because Rule 26(b) and Rule 35 operate independently, a Rule 35 examiner's report and a Rule 26(a)(2)(B) report must be two separate things. Defendants' logic does not hold, however. The *Waggoner* court was addressing the issue of deadlines for delivery of a report and this Court is concerned with the requirement of a report being delivered at all. A report might be required under more than one rule, but if that is the case, a choice must be made as to which of two conflicting deadlines applies for delivery of the report.

Aside from the different legal question resolved by the *Waggoner* court, even if the holding of that case could be extrapolated to mean that a party cannot choose to obtain a report under one of the two rules when the other rule also is implicated, Defendants do not explain why it necessarily follows that Rule 35 trumps Rule 26(b)(2)(B). Defendants appear to reach this result merely by characterizing Dr. Gibson's March 2022 report as a Rule 35 report. Thus, they assert that "[a] party is not entitled to a Rule 35 report pursuant to Rule 26(b)(4)(A)" [DE 36 at 5], and that "the Court does not cite to any precedent suggesting that a Rule 35 examiner's report must be disclosed

---

[9] *See* [DE 36 at 8 ("Defendants argue that the court's reasoning in *Waggoner* is persuasive and should be applied in the instant case. Rationalizing that Plaintiffs here would have no reason to request a copy of Dr. Gibson's report because Defendants would be obligated to provide a copy of the report pursuant to Rule 26(a)(2)(C) would be erroneous and ignores the fact that a Rule 35 report is to be prepared and issued only if requested by the party who is examined.")].

pursuant to Rule 26(a)(2)(B)" [*id.* at 6]. But the Court did not hold that Defendants needed to produce a Rule 35 examiner's report; it held that Defendants needed to produce *Dr. Gibson's* report, because of Defendants' designation of Dr. Gibson as a testifying expert witness and Rule 26(a)(2)(B). In fact, Defendants themselves referred to the March 2022 report as Dr. Gibson's "final report" when they delivered it to Plaintiffs. [DE 27-2]. The label "final" suggests Defendants were distinguishing Dr. Gibson's March 2022 report from his pre-Rule 35 examination report served on Plaintiffs in October 2021 as part of Defendants' expert witness disclosures. Thus, Defendants themselves seemed to believe at the time they served Plaintiffs with Dr. Gibson's post-Rule 35 examination report that the report was a "final" version of a Rule 26(a)(2)(B) report. Further, aside from relying on *Waggoner*, Defendants do not explain their suggestion that Dr. Gibson's report can *only* be characterized as Rule 35 report and not both a Rule 35 and Rule 26(a)(2)(B) report. In fact, case law recognizes that, to the extent there is any difference between a Rule 35 report and a Rule 26(a)(2)(B) report, it consists primarily of the requirements found *only* in Rule 26(a)(2)(B)(iv)-(vi) that the witness's qualifications, list of publications, list of other cases, and statement of compensation be disclosed. Those items were included in Dr. Gibson's original pre-Rule 35 examination report [DE 26-3 at 32-55], and so that report was clearly prepared under Rule 26(a)(2)(B), not Rule 35. Dr. Gibson's later "final" report obviously would fall under Rule 26(e)'s supplementation requirement, in addition to being a Rule 35 examiner's report.

Insofar as *Waggoner* has any bearing on the issue of whether Dr. Gibson's report was a Rule 26(a)(2)(B) report or a Rule 35 report, the court's holding in that case actually suggests it could qualify as *both*. That is, courts following the *Waggoner* decision have noted that its "independent operation" rationale is limited to a Rule 35 examiner who has *not* been designated as a testifying witness. *See Gibson,* 2017 WL 2982952, at *2-3 (quoting *Waggoner*, 242 F.R.D. at

14

414). Those courts have noted that the "independent operation" of the two rules as discussed in *Waggoner* "evaporates" when the examining party seeks to use the Rule 35 examiner as a testifying expert witness. *Id.* (quoting *Perez*, 2011 WL 855673 at *3); *see Diaz v. Con-Way Truckload, Inc*., 279 F.R.D. 412, 419 (S.D. Tex. 2012) (quoting *Perez*, 2011 WL 855673, at *3) ("[A]ny perceived independent operation of Rules 26 and 35 seems to fade 'where the Rule 35 examination request ... is initiated for the purpose of providing expert testimony at trial.'"). Courts have held that, where a defendant will use the Rule 35 expert to support the defendant's overall position, or attack the position of the plaintiff's expert, the "Rule 35 exam and the retained expert's opinions are inextricably intertwined." *Minnard v, Rotech Healthcare Inc.,* Civ. No. S-06-1460 GEB GGH, 2008 WL 150502, at *2 (E.D. Cal. Jan. 15 2008) (emphasis added); *see also Wormuth v. Lammersville Union Sch. Dist*., No. 2:15-CV-1572-KJM-EFB, 2017 WL 3537257, at *2 n.5 (E.D. Cal. Aug. 17, 2017) (the characterization of Rule 35 as independent of Rule 26 falls away when "defendants seek the Rule 35 exam to acquire information needed by their expert to prepare her Rule 26(a)(2) report"). Thus, "most courts that have considered this question have persuasively found that Rules 26 and 35 must be read in conjunction with each other." *Garayoa v. Miami-Dade Cnty*., No. 16-CIV-20213, 2017 WL 2880094, at *4 (S.D. Fla. July 6, 2017).

In short, Defendants' new case law is not only factually inapposite but the general language on which Defendants rely has been held unpersuasive to the context here of a Rule 35 examiner who is designated to testify at trial as an expert witness. In that situation, the Rule 35 examiner's report and the Rule 26(b)(2)(A) testifying expert's report are "inextricably linked." Accordingly, Defendants had a duty to disclose Dr. Gibson's March 2022 supplemental expert report under Rule 26(b)(2)(A) and (e) without Plaintiffs having to resort to a "request" for its production under Rule 35(b).

Finally, Defendants suggest—as they did in their Motion to Compel—that the issue before the Court turns in some manner on Plaintiffs' subjective beliefs as to whether they were entitled to Dr. Gibson's expert report under Rule 35 or under Rule 26,[10] as well as on the peculiar circumstances of this case.[11] But again, Defendants do not cite any legal authority that these matters are legally relevant. Similarly, they do not provide any legal argument or authority for why it is legally relevant to the issue here that Plaintiffs failed to take affirmative steps to inform Defendants that they "did not *intend* to waive privilege under Rule 35(b)(4)." [DE 36 at 2 (emphasis added)]. Instead, they simply assert that their disclosure of Dr. Gibson as a testifying expert witness (and presumably delivery of his report under Rule 26(a)(2)(B)), should not be viewed "in a vacuum" [*id.* at 1], in that there was an expectation at that time of a "voluntary reciprocal exchange" of expert reports because Plaintiffs had disclosed a testifying expert who was expected to opine on Dr. Gibson's report (and visa versa).

To be sure, Defendants likely were caught off guard when Plaintiffs' testifying expert witness had to be replaced and Plaintiffs subsequently re-designated the replacement expert as a non-testifying expert. But Defendants do not contest Plaintiffs' right to redesignate their expert as a non-testifying witness as discussed in the Court's previous order. Nor do they question the case law cited in the Court's previous order that holds the non-testifying expert witness privilege is not waived so long as the re-designation occurs before the delivery of an expert report. Any suggestion

---

[10] *See, e.g.,* [DE 36 at 6 ("There is no evidence Plaintiffs believed they were entitled to the Rule 35 report under Rule 26 at the time they issued their subpoena.")].

[11] *See, e.g.,* [DE 36 at 2-3 (Until Plaintiffs re-designated Dr. Rothke from a testifying to a non-testifying expert witness, "[t]hey clearly … expected [Dr. Rothke] to review [Dr. Gibson's] reports and to author a report in response, even suggesting that Dr. Gibson could prepare a rebuttal report once Dr. Rothke's report was available …. That sounds like anything but a party who gratuitously received a report it never intended to request—despite issuing a subpoena explicitly requesting all documents in Dr. Gibson's possession in anticipation of his deposition.")].

that Defendants would have re-designated Dr. Gibson as a non-testifying expert had they known that Plaintiffs would withdraw their testifying expert witness is not credible because Defendants waived any privilege under Rule 26(b)(4)(D) when they served Plaintiffs with Dr. Gibson's initial expert report in October 2021, long before Dr. Rothke's report was due. Essentially, Defendants ended up delivering the report of their Rule 26(b)(2) expert witness before Plaintiffs delivered their expert witness report because of Plaintiffs' unanticipated need to find a new expert after the deadline for their expert witness disclosures had passed. But Defendants consented to allowing Plaintiffs to substitute experts out of time, and the parties' rights and duties flow from the rules as applied to that agreed-upon arrangement.

There is no basis in the record for the Court to conclude that Defendants are in a worse position as a result of this timing, or that they would have withdrawn Dr. Gibson as a testifying expert had they known when they delivered his initial report to Plaintiffs that Plaintiffs were going to need to substitute experts and then later decide to proceed without a testifying expert. Instead, from the record it looks like Defendants are merely trying to capitalize on the situation that Plaintiffs found themselves in when their original expert had to withdraw and the replacement expert, for whatever reason, turned out to be an unsuitable substitute. The expert witness rules allow Plaintiffs to redesignate their witness as non-testifying so long as the redesignation was timely, and Defendants apparently agree that it was. The Court perceives no unfairness with allowing Plaintiffs to maintain a privilege over the withdrawn, non-testifying expert's opinions while requiring Defendants to adhere to their Rule 26(b)(2) disclosure obligations for an expert witness whose testimony they intended from the start, and continue to intend, to use at trial.

<u>**CONCLUSION**</u>

As shown above, Defendants advance the same arguments that the Court already addressed, and their Motion to Reconsider simply reflects disagreement with the Court's analysis of their Motion to Compel. As a result, Defendants have not provided a proper basis for reconsideration. Moreover, any new arguments they make were available to them when the Motion to Compel was briefed, lack proper development, and are, in any event, unsupported by the cases Defendants cite for the first time in the instant motion. Accordingly, Defendants' Motion to Reconsider **[DE 36]** is **DENIED**.

So ORDERED this 5th day of July, 2023.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

<u>**ADDENDUM**</u>

<u>**ORDER**</u>

This matter is before the Court on Defendants' Motion To Compel Report Pursuant To Federal Rule Of Civil Procedure 35(b)(3). [DE 26]. For the reasons that follow, Defendants' Motion is DENIED.

<u>**BACKGROUND**</u>

This case arises out of an automobile accident that occurred on April 30, 2020. Terry Larson and his wife Jayne Larson ("Plaintiffs") filed a complaint in the Superior Court of Porter County, Indiana, on June 4, 2020 against Davidson Trucking, Inc. and Gary Eidt ("Defendants"). The complaint alleges that Eidt was a professional truck driver employed by or for the benefit of Davidson Trucking, and that Eidt disregarded a red stop light, driving his tractor-trailer rig into an

intersection directly in the path of Terry Larson's vehicle causing him to sustain permanent and severe personal injuries. *See* [DE 4]. On July 6, 2020, Defendants removed the state court complaint to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. *See* [DE 1 ¶¶ 10-18].

On March 17, 2021, pursuant to an agreed motion to extend the deadlines in the Court's original Scheduling Order, the Court ordered that Plaintiffs deliver their expert witness disclosures and reports to Defendants by September 21, 2021, that Defendants deliver their expert witness disclosures and reports to Plaintiffs by October 21, 2021, and that all discovery be completed by April 27, 2022. *See* [DE 14; DE 15].

On September 21, 2021, Plaintiffs served Defendants with their expert witness disclosures, which included a report prepared by Dr. Jeri Morris, a neuropsychologist who Plaintiffs anticipated would offer expert testimony that Mr. Larson suffered a mild traumatic brain injury (mTBI) from the April 30, 2020 accident. *See* [DE 26 at 2; DE 26-1 at 10, DE 26-1 at 202-205 (Morris Expert Report)].

On October 8, 2021, Defendants emailed Plaintiffs requesting that Mr. Larson submit to a neuropsychological examination pursuant to Federal Rule of Civil Procedure 35 ("Rule 35 examination").[12] The Rule 35 examination was to be conducted by Dr. Douglas Gibson, a neuropsychologist retained by Defendants for that purpose. *See* [DE 26-2].

On October 21, 2021, Defendants served Plaintiffs with their expert witness disclosures. *See* [DE 26-3 at 2]. The disclosures identified Dr. Gibson as an expert witness who "will testify[ ] based upon his review of," among other things, Dr. Morris's examination and testing and those of

---

[12] Rule 35 states in relevant part that "[t]he court where the action is pending may order a party whose mental or physical condition … is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1).

"Dr. Richard Cristea and others"; police bodycam video; and Mr. Larson's deposition testimony. [*Id.* at 3 ]. The disclosure included a written report by Dr. Gibson in which he opined that the reviewed materials do not support Mr. Larson's contention that he suffered a traumatic brain injury from the accident. *See* [*id.* at 27-31 (Gibson Expert Report)].

Mr. Larson appeared for the Rule 35 examination with Dr. Gibson on March 11, 2022. *See* [DE 21 ¶ 5; DE 26 at 2 (¶ 6)]. An email from Defendants' counsel indicates that Defendants originally tried to schedule Dr. Gibson's Rule 35 examination of Mr. Larson prior to the October 21, 2021 due date for their expert disclosures. *See* [DE 26-2]. Plaintiffs state, however, that the examination was delayed from its original scheduled date "due to covid exposure, which prevented the neuropsychological examination from proceeding." [DE 21 ¶ 5]. Rather than seek an extension of the deadline for their expert disclosures, it appears that Defendants submitted a preliminary report by Dr. Gibson at the time their disclosures were due, which was based on documents and examinations already in the record. They later supplemented that expert disclosure with a final report by Dr. Gibson following the March 11, 2022 Rule 35 examination, as discussed below.

On March 21, 2022, Plaintiffs issued a Rule 45 document subpoena to Dr. Gibson commanding him to produce (in relevant part):

> 1.    Copies of any and all medical records, documents and electronically-stored information concerning any care of and/or treatment rendered to Terry Larson …, including, but not limited to mental health tests (including raw data), file cover notations, office notes, prescription records, statements, correspondence, court papers, admission papers, consent forms, admission and discharge summaries, history and physical reports and summaries, evaluations, physicians' orders, progress notes, laboratory reports, x-ray reports, photographs, video films, operative records, intra-operative nursing notes, anesthesia records, pathology reports, evaluations, electronic mail transmissions/communications, and any other documents, medical records and electronically-stored information relating to this individual (i.e. complete

> file/records/electronically-stored information from January 1, 2010 to the present);
>
> 2.      All raw data documentation relative to Terry Larson concerning care and/or treatment rendered from April 30, 2020, to the present; and
>
> ….
>
> 6.      All testing raw data, to be produced to Dr. T. Morris, with notice to Plaintiffs' counsel.

[DE 26-4 at 8].

Plaintiffs' counsel states (in a declaration filed with Plaintiffs' brief in opposition to Defendants' motion to compel): "On April 14, 2022, I received, via e-mail, an unsolicited copy of Dr. Gibson's examiner's report dated April 8, 2022 from Defendants' counsel." [DE 27-1 ¶ 5]. Plaintiffs attach the April 14 email to their response brief, which shows that Defendants' counsel stated that he was "attaching Dr. Gibson's final report along with an invoice for forwarding the raw testing data to Dr. Morris."[13] [DE 27-2]. In addition, Defendants' counsel stated that the final report and invoice "have also been uploaded to Dr. Gibson's Response to Plaintiffs' Subpoena share file." [*Id.*]. Defendants do not reference the April 14, 2022 email in their motion to compel, but instead state that, "[o]n April 20, 2022, Dr. Gibson's Response To Subpoena to Produce Documents … was provided to Plaintiff's counsel, including Dr. Gibson's Pre-IME report and Final Report (post-Rule 35 examination)." [DE 26 at 3 (¶ 8)].

On April 22, 2022, Plaintiffs filed an agreed motion to extend the deadline for completion of discovery. [DE 21]. The motion stated that Plaintiffs needed more time to prepare for the

---

[13] Plaintiffs state that their counsel requested that the raw data from Dr. Gibson's neuropsychological examination and testing of Mr. Larson be forwarded directly to their expert, Dr. Morris, because the American Psychological Association ethics rules require that testing raw data only be provided to a licensed psychologist and that production to the attorneys is not permitted. [DE 21 ¶ 6].

deposition of Defendants' expert witness, Dr. Gibson, because Plaintiffs' expert witness, Dr. Morris, was on medical leave and unable at that time to examine and analyze the raw data from Dr. Gibson's Rule 35 examination of Mr. Larson and Dr. Gibson's report dated April 8, 2022. [*Id.* ¶ 7]. Pursuant to the parties' agreement, the Court extended the deadline for the completion of discovery to August 25, 2022. [DE 23].

On June 8, 2022, Plaintiffs filed an Agreed Motion for Leave to Substitute Expert Witness and Extend the Discovery Deadline. [DE 24]. The motion stated that, on May 26, 2022, Plaintiffs' counsel had received correspondence from an associate of Dr. Morris advising that "Dr. Morris continues to be on medical leave, her prognosis is 'guarded,' and it is unknown when she will return to work. As a result, Dr. Morris 'can no longer provide services in any capacity.'" [*Id.* at 3 (¶ 9)]. Due to Dr. Morris's inability to continue as a neuropsychology expert in the case, Plaintiffs needed to find a substitute witness to provide expert opinions and trial testimony. [*Id.* (¶ 10)]. The motion stated that Plaintiffs had found a substitute expert, Dr. Steven Rothke, and requested permission to amend their expert witness disclosures to name Dr. Rothke in place of Dr. Morris. The motion also asked for an extension of the expert disclosure deadline for Dr. Rothke to provide his written report by July 31, 2022, with Defendants being given an extension until August 31, 2022 to provide a supplemental expert report by Dr. Gibson responding to the new report to be provided by Dr. Rothke. Finally, the motion requested an extension of the discovery deadline until November 30, 2022 to allow for the completion of expert discovery following the exchange of new expert witness reports. On June 9, 2022, finding good cause and noting the agreement of the parties, the Court granted Plaintiffs' motion and extended the deadlines as requested in the motion. [DE 25].

On August 1, 2022, Plaintiffs' counsel sent Defendants' counsel an email stating that Plaintiffs were withdrawing Dr. Rothke as a testifying expert and redesignating him as a consulting expert. [DE 27 at 3 (¶ 14); DE 27-3 (August 1, 2022 email from Plaintiffs' counsel)]. After Plaintiffs withdrew Dr. Rothke as a testifying expert, Defendants' counsel requested that Plaintiffs provide a report from Dr. Rothke, stating that Defendants were entitled to a report and to discover opinions held by Dr. Rothke pursuant to Federal Rule of Civil Procedure 35(b)(3) and (4)[14]. [DE 26-5 (August 1, 2022 email from Defendants' counsel)]. Plaintiffs' counsel objected to Defendants' request for a report from Dr. Rothke, asserting, among other things, that a report was not required under Rule 35 because Plaintiffs never made a Rule 35 request for Dr. Gibson's examiner's report, and that Dr. Gibson's report had been produced to Plaintiffs pursuant to Rule 26(a)(2)[15] rather than Rule 35. [DE 27-4 (August 5, 2022 e-mail from Plaintiffs' counsel) ("You voluntarily produced the report on April 14, 2022 and voluntarily produced a revised report on April 20, 2022. Further, you identify these reports as Dr. Gibson's 'final report.'")]. Plaintiffs' counsel also stated that Dr. Rothke did not prepare a report, and that since Plaintiffs had withdrawn him as a testifying expert, he was not required to prepare one. [*Id.*]. Plaintiffs' counsel later sent a

---

[14] Rule 35(b) states in relevant part: "The party who moved for the [Rule 35] examination, must, on request, deliver to the requester a copy of the examiner's report, together with like reports of all earlier examinations of the same condition." Fed. R. Civ. P. 35(b)(1). Further, "[a]fter delivering the reports, the party who moved for the examination may request—and is entitled to receive—from the party against whom the examination order was issued like reports of all earlier or later examinations of the same condition." Fed. R. Civ. P. 35(b)(3). In addition, "[b]y requesting and obtaining the examiner's report, or by deposing the examiner, the party examined waives any privilege it may have—in that action or any other action involving the same controversy—concerning testimony about all examinations of the same condition." Fed. R. Civ. P. 35(b)(4).

[15] Rule 26(a)(2) states in relevant part that "a party must disclose … the identity of any witness it may use at trial to present [expert testimony]," and that the disclosure of such an expert "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case …." Fed. R. Civ. P. 26(a)(2)(A), (B).

23

second email in which he reiterated that Dr. Rothke was a consulting expert and not a testifying expert, and therefore that his opinions were protected from disclosure absent a showing of exceptional circumstances pursuant to Rule 26(b)(4)(D)(ii).[16] [DE 27-5 (August 31, 2022 e-mail from Plaintiffs' counsel)].

Following this exchange of emails, on September 1, 2022, Defendants filed the present motion to compel. [DE 26]. Plaintiffs filed a response on September 14, 2022 [DE 27], and Defendants filed a reply on September 19, 2022 [DE 28]. On October 13, 2022, the Court held a telephonic hearing on Defendants' motion at which time it heard arguments from counsel. The Court took Defendants' motion under advisement. [DE 31]. Pursuant to an agreed motion filed by the parties on November 30, 2022, the Court extended the remaining discovery deadlines in the case to ninety days after an order on Defendants' motion to compel is issued. [DE 32, 33].

## DISCUSSION

Defendants seek an order compelling Plaintiffs to produce a report by Dr. Rothke that meets the requirements of Rule 35(b)(2).[17] *See* [DE 26 at 8]. A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a). The Court has broad discretion when deciding whether to compel discovery. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir.

---

[16] Rule 26(b)(4)(D) states that, "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D).

[17] Rule 35(b)(2) states that "[t]he examiner's report must be in writing and must set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests." Fed. R. Civ. P. 35(b)(2).

2002). As the party objecting to the discovery request, Plaintiffs bear the burden of showing why the request is improper. *See McGrath v. Everest Nat'l Ins. Co.,* 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008).

The Court begins with what is not in dispute. It is undisputed that a party may employ two types of expert witnesses under Rule 26(b)(4), testifying experts and non-testifying (consulting) experts, and that, in general, discovery is allowed only from a testifying expert. *See* Fed. R. Civ. P. 26(b)(4)(A), (D). It also is not in dispute that Plaintiffs initially designated Dr. Rothke as a testifying expert but later redesignated him as a consulting expert. Significantly, Defendants do *not* dispute the case law cited in Plaintiffs' response [DE 27 at 5], which holds that "[a] party can change a testifying expert to a non-testimonial expert up until the expert report is disclosed," and that, "[b]y doing so, the party is entitled to confidentiality for the information it disclosed to the expert." *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt.*, Nos. 2:07–cv–358, 3:08–cv–60, 2010 WL 2162633, at *3 (N.D. Ind. May 25, 2010); *see also Davis v. Carmel Clay Sch.*, No. 1:11-cv-771-SEB-MJD, 2013 WL 2159476, at *7 (S.D. Ind. May 17, 2013) ("prior to producing the expert report, courts find that a party can change a testifying expert to a non-testimonial expert without losing the protections of Fed. R. Civ. P. 26(b)(4)(D)").[18] Finally, Defendants do not make

---

[18] There is conflicting case law outside this circuit on whether a party is entitled to the protection against disclosure in Rule 26(b)(4)(D)(ii) if he redesignates the expert to non-testifying *after* a report has been provided. *See, e.g., Fed. Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* No. C05-01878 JW (HRL), 2008 WL 761417, at *3 (N.D. Cal. Mar. 19, 2008) (observing that "the majority of courts that have confronted this issue have concluded that the 'exceptional circumstances' standard [of Rule 26(b)(4)(D)(ii)] applies" to discovery of an expert redesignated from testifying to non-testifying even though the redesignation took place after the expert produced a report). But based on Seventh Circuit authority, courts in this circuit have held that any right to confidentiality ends once a report has been disclosed. *See Davis*, 2013 WL 2159476, at 5 (citing *S.E.C. v. Koenig*, 557 F.3d 736, 744 (7th Cir. 2009)). Defendants mention that Plaintiffs did not redesignate Dr. Rothke until August 1, 2022, one day after his expert report was due. But that timing does not appear to be relevant as the cited case law suggests that confidentiality turns not on the disclosure

any attempt to argue that the exception to non-disclosure in subsection (ii) of Fed. R. Civ. P. 26(b)(4)(D) for "exceptional circumstances" applies. Defendants' only argument is that the exception in subsection (i) of Fed. R. Civ. P. 26(b)(4)(D) for disclosure "as provided in Rule 35(b)" applies instead. In other words, the issue for the Court to decide boils down to whether the disclosure provisions in Rule 35 independently require Plaintiffs to produce an expert report by Dr. Rothke under the facts of this case.

### 1. Whether Plaintiffs made a Rule 35 "request" for Dr. Gibson's expert report

Defendants argue that Plaintiffs are required to produce an expert report by Dr. Rothke pursuant to Rule 35(b)(3), which states that "the party who moved for the examination [i.e., Defendants here] may request—and is entitled to receive—from the party against whom the examination order[19] was issued [i.e., Plaintiffs here] like reports of all earlier or later examinations of the same condition." Fed. R. Civ. P. 35(b)(3). For the most part, Defendants appear to acknowledge that their entitlement under Rule 35(b)(3) to receive "like reports," i.e., a report from Dr. Rothke, constitutes a reciprocal disclosure requirement that comes into play only if Plaintiffs first *requested* that Defendants provide them with a copy of Dr. Gibson's examiner's report. *See* Fed. R. Civ. P. 35(b)(1).[20]

---

deadline but on whether a report has already been disclosed, and Defendants do not argue otherwise.

[19] Rule 35 refers to a court order requiring the Rule 35 examination. *See* Fed. R. Civ. P 35(a) ("Order For An Examination"). But, here (like in many cases) Plaintiffs agreed to the examination without a court order. The rule acknowledges this situation and expressly states that subdivision (b) of the rule—including the examiner's report, reciprocity, and waiver requirements—"applies also to an examination made by the parties' agreement, unless the agreement states otherwise." Fed. R. Civ. P. 35(b)(6).

[20] That is, subsection (b)(1) states that an examiner's report must be provided by the party who moved for the Rule 35 examination (i.e., here, Defendants) "on request" by the opposing party (i.e., Plaintiffs). But then subsection (b)(2) states that, following the delivery of said examiner's

Defendants argue that Plaintiffs made such a request by virtue of the document subpoena Plaintiffs sent to Dr. Gibson, and that Defendants gave Dr. Gibson's report to Plaintiffs because of that request. On its face, the subpoena does not make any per se request for a Rule 35 examiner's report from Dr. Gibson, as it does not mention by name either Rule 35 or Dr. Gibson's report. Instead, it is plainly a document subpoena for relevant documents in anticipation of Dr. Gibson's deposition. Furthermore, the Court does not believe it is necessary to parse the language of the subpoena to determine whether the documents requested therein encompass Dr. Gibson's report. That the subpoena could be interpreted to require the production of Dr. Gibson's anticipated[21] final report[22] does not mean that Plaintiffs made a specific request pursuant to Rule 35 that Defendants produce the examiner's report. Without such a request, Defendants have no rights under the reciprocity provision in Rule 35(b)(3) even though they delivered the report to Plaintiffs as part of their response to the subpoena. *See Benning v. Phelps*, 249 F.2d 47, 48 (2d Cir. 1957) (per curiam) (where, in granting defendant's motion for a second medical examination of the plaintiff, *the court* ordered defendant to provide plaintiff with the second examiner's report; held that plaintiff had no reciprocal obligation under Rule 35 because the plaintiff "received copies of defendants' reports

---

report, the delivering party "is entitled to receive" from the party who requested the examiner's report "like reports of an earlier or later examinations of the same condition." And subsection (b)(4) states that by requesting and obtaining the examiner's report, or by deposing the examiner, the party examined waives any privilege it may have … concerning testimony about all examinations of the same condition."

[21] Plaintiffs argue that "Dr. Gibson's examiner's report was not even prepared until April 8, 2022, so it was not even in existence to subpoena on March 21, 2022." [DE 27 at 11]. The evidence in the record, however, does not clearly demonstrate when the report was prepared or first came into existence.

[22] The Court refers to Dr. Gibson's report following his examination of Mr. Larson—as Defendants did at the time of its production—as Dr. Gibson's "*final* report," as distinguished from Dr. Gibson's initial report based on his review of documents only, delivered to Plaintiffs on October 21, 2021 as part of Defendants' Rule 26 expert disclosures.

pursuant to an order of the court, and not pursuant to his own request"); *Hardy v. Riser*, 309 F. Supp. 1234, 1236 (N.D. Miss. 1970) (where plaintiff agreed to a medical examination and examining physician sent a copy of his report to the plaintiff "as a matter of course and not at request of plaintiff or his counsel"; held that "[t]he delivery of an unrequested medical report does not satisfy the waiver requirement of Rule 35(b)(2) [now codified at subsection (b)(4)]"); *see also Sher v. DeHaven*, 199 F.2d 777, 781 (D.C. Cir. 1952) (stating that the defendant's "mere willingness to furnish [the plaintiff] a report [of defendant's examiner] which [the plaintiff] had not requested … did not entitle [the defendant] under Rule 35 to demand reports of other examinations which [the plaintiff] had undergone on his own account").[23]

Defendants argue that, "[b]ecause Plaintiffs have never provided notice that their subpoena to Dr. Gibson was not intended to operate as a waiver of privilege under FRCP 35(b), the parties and the court may assume the waiver was intended." [DE 28 at 4]. Defendants cite no legal

---

[23] None of the cases cited by Defendants are on point or suggest a contrary rule. Defendants cite *Chastain v. Evennou*, 35 F.R.D. 350 (D. Utah 1964), but there the plaintiff did not dispute he had a reciprocal duty to provide the defendant with reports of physicians who had examined or treated him at his request. Instead, the plaintiff argued he should not be required to turn over one such report on the ground that it included gratuitous comments concerning the litigation. The court held that, while some extraneous materials in a report might be unjustifiably prejudicial to the plaintiff to such an extent that it would be proper to withhold the report, that was not the case before the court. *Id.* at 353. Defendants also cite *Weir v. Simmons*, 233 F. Supp. 657 (D. Neb. 1964). But there the plaintiff had previously sought and obtained a court order requiring the defendant to provide a copy of the Rule 35 examiner's report. *Id.* at 658 (distinguishing the Second Circuit's opinion in *Benning* on this basis). The court held that a judicial order, issued upon motion filed by the plaintiff, constituted a request under Rule 35(b), thereby giving rise to a reciprocal disclosure duty on the plaintiff's part. *Id.* at 659 ("The use of the word 'requested' in Rule 35(b)(1) contemplates not only the personal request by a party's attorney, but also a court order pursuant to motion, for it is under this provision which the court must act … if voluntary reciprocity is not forthcoming from the parties"). The *Weir* court also held that the defendant was entitled to receive reports of examinations made both prior to and after the Rule 35 examination, as explicitly stated in subdivision (b)(3). *Id.* But Plaintiffs here do not argue that they have no obligation to provide a report from Dr. Rothke based on the fact that Dr. Rothke's examination occurred after Dr. Gibson's examination.

authority for their argument, however. Moreover, their argument is not persuasive as a factual matter. "[W]aiver is the intentional relinquishment or abandonment of a known right," which can be either explicit or " inferred from inconsistent actions." *Smith v. GC Servs. Ltd. P'ship*, 907 F.3d 495, 499 (7th Cir. 2018) (internal quotation marks and citations omitted). Implying a waiver here makes little sense because Plaintiffs had no need to rely on Rule 35 to obtain Dr. Gibson's report; they already had the right to obtain the report using other discovery tools available to them. Defendants had earlier designated Dr. Gibson pursuant to Rule 26(a)(2)(A) as an expert who would testify on their behalf at trial. Thus, Plaintiffs had the right to depose Dr. Gibson, and to obtain relevant discovery from him in anticipation of that deposition. *See* Fed. R. Civ. P. 26(b)(4)(A) ("A party may depose any person who has been identified as an expert whose opinions may be presented at trial."); Fed. R. Civ. P. 45(a)(1)(C) ("…. A command to produce documents, electronically stored information, or tangible things or to permit the inspection of premises may be included in a subpoena commanding attendance at a deposition …."). And apart from these rules, Defendants were obligated under Rule 26(a)(2)(B) to provide Plaintiffs with a copy of Dr. Gibson's report, without Plaintiffs having to request one. *See* Fed. R. Civ. P. 26(a)(2)(B) ("Witnesses Who Must Provide a Written Report"). Indeed, when Defendants provided Plaintiffs with Dr. Gibson's examination report, their email by which they transmitted the report referred to it as Dr. Gibson's "*final* report," suggesting a connection to the earlier report by Dr. Gibson made prior to his examination of Mr. Larson, which Defendants delivered to Plaintiffs on October 21, 2022 as part of their Rule 26 disclosures. The email shows that Defendants themselves contemplated that the report was being provided pursuant to Rule 26 rather than Rule 35.

When asked at the hearing about Defendants' independent obligation under Rule 26 to provide Plaintiffs with Dr. Gibson's report since he was designated as an expert witness who

would be testifying at trial on their behalf, counsel for Defendants seemed to suggest there was some kind of mutuality required in interpreting Rules 26 and 35, which would relieve Defendants of their obligation under Rule 26 to provide an expert report from Dr. Gibson. Defense counsel appeared to argue this was the case due to Plaintiffs' position that only a request for Dr. Gibson's report made specifically under Rule 35(b)(1) operates as a waiver of any privilege applicable to Dr. Rothke's report. Defendants' counsel contended that, if Plaintiffs' interpretation of Rule 35 was correct, then it also must be the case that the only way Plaintiffs could have obtained Dr. Gibson's report was by requesting a copy of it pursuant to Rule 35(b)(1). If the Court understands Defendants' counsel's argument correctly, its unstated premise is that there has to be mutuality of disclosure obligations. But that is not true. Mutuality of disclosure under Rule 26 only exists as to testifying experts, and Dr. Rothke was redesignated as a non-testifying expert.

Furthermore, nothing in Rule 35 suggests that the intent of that Rule was to eliminate the privilege accorded under Rule 26 for a party's non-testifying expert whenever the opposing party requests a Rule 35 examination and designates that expert as a testifying expert. To begin with, Defendants' argument otherwise is based on a false equivalency between a report by Dr. Rothke and Dr. Gibson's report—the former is privileged and the latter is not. If Dr. Gibson were not designated as a testifying expert, then his report would be privileged like Dr. Rothke (although some courts would still accord Dr. Gibson less protection in that situation, which is not before the Court).[24] But because Dr. Gibson is a testifying expert, to impose equivalent disclosure rules for

---

[24] *See, e.g., Lehan v. Ambassador Programs, Inc.,* 190 F.R.D. 670, 671–72 (E.D. Wash. 2000) ("Some courts have found that by submitting to a Rule 35 exam, the party has an 'entitlement' not only to the Rule 35 report but also 'to call an opposing party's Rule 35 expert, despite the opposing party's desire not to have the expert testify.' The rationale for such an approach is that this 'entitlement' is the corresponding right that accompanies the surrender of a right of privacy upon the duty to submit to the Rule 35 exam. 'In return for suffering an invasion of his person, the examined party is entitled to make use of such information as results from the examination.'"

the two reports would eliminate Plaintiffs' right under Rule 26 to retain a consulting expert. Defendants would be able to unilaterally override the protection afforded by Rule 26(b)(4)(D) by simply providing Plaintiffs with a copy of their testifying expert's report, which they already had an obligation to provide.

Nothing in Rule 35 suggests it was intended to nullify the independent obligation under Rule 26 to provide a report for a testifying expert. Indeed, Rule 35 contains language stating the opposite. Subdivision (b)(6) of Rule 35 explicitly states that "[t]his subdivision does not preclude obtaining an examiner's report or deposing an examiner under other rules." Fed. R. Civ. P. 35(b)(6). The advisory committee notes to the rule explain that subdivision (b)(6)

> makes clear that reports of examining physicians are discoverable not only under Rule 35(b) but under other rules as well. To be sure, if the report is privileged, then discovery is not permissible under any rule other than Rule 35(b) and it is permissible under Rule 35(b) only if the party requests a copy of the report of examination made by the other party's doctor. But *if the report is unprivileged* and is *subject to discovery under the provisions of rules other than Rule 35(b)—such as Rules 34 or 26(b)(3) or (4)—*the discovery should not depend upon whether the person examined demands a copy of the report.

Fed. R. Civ. P. 35, advisory committee notes, 1970 amendment (citations omitted) (emphasis added).

_____

(citations omitted)); *see, e.g., House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 246 (N.D. Iowa 1996) (concluding that the "kind of reliance" created by a party's "submission to a [Rule 35] medical examination by the designated expert" constituted a substantial reason for the court to have the discretion to allow the medical examiner to be deposed, even after being designated a non-testifying expert, "where the trial court's discretion is guided by a balancing of probative value against prejudice under Fed. R. Evid. 403"); *but see Dunning v. Thomas*, No. 4:20-cv-177-TWP-DML, 2021 WL 4860954, at *4 (S.D. Ind. Oct. 19, 2021) (applying exceptional circumstances test of Rule 26(b)(4)(D) to issue of whether the plaintiff could call at trial the examiner whose report was provided to the plaintiff pursuant to request under Rule 35(b) but who the defendant designated as a non-testifying expert under Rule 26(b)(4)).

In short, Plaintiffs did not need to rely on Rule 35 to obtain Dr. Gibson's expert report. Because Dr. Gibson is a testifying expert, the report was not privileged, and, pursuant to Rule 26(a)(2)(B), Plaintiffs were entitled to it without making a request. As Plaintiffs point out, they also could have issued a Rule 34 document production request to obtain the report since Dr. Gibson has been designated as a testifying witness, although such a request was not necessary given that Defendants were obligated by Rule 26(a)(2)(B) to provide it without such a request being made.[25] And subsection (b)(6) of Rule 35 makes clear that the reciprocal disclosure requirements of that rule are not implicated if the examiner's report is not privileged and thus subject to discovery under any other rule.

### 2. Whether Defendants are entitled to a report from Dr. Rothke even without Plaintiffs having made a request for Dr. Gibson's report under Rule 35

Finding, as the Court does, that Plaintiffs never made a "request" for Dr. Gibson's report under Rule 35—meaning that the reciprocity requirement of subdivision (b)(3) and waiver rule of subdivision (b)(4) never come into play—would seem to be the end to Defendants' argument that the Court should compel Dr. Rothke to produce a report. Yet Defendants also argue, somewhat inconsistently with their argument that Plaintiffs made a Rule 35 request for Dr. Gibson's report,

---

[25] Citing to the *Buffington v. Wood*, 351 F.2d 292 (3d Cir. 1964), discussed further *infra*, Defendants argue that Plaintiffs have not produced any evidence that they requested Dr. Gibson's report under Rule 34. *See* [DE 28 at 2 n.1]. A Rule 34 document request was mentioned by the *Buffington* court only in the context of explaining why the Rule 35 waiver by the plaintiff of any privilege that may protect his own medical examination reports was needed where the plaintiff sought and obtained a copy of the defendant's medical examiner's report. It was needed because, in some states, the plaintiff's reports were protected from disclosure by a physician-patient privilege that applied in those states making the reports not otherwise discoverable under Rule 34. *See id.* at 296 n. 13 (discussing *Sher*, 199 F.2d 77). *Buffington* does not deal with the interplay between Rule 26 and Rule 35, however. Further, nothing in the *Buffington* court's discussion of Rule 34 suggests that, in the current circumstances, Plaintiffs needed to have issued a Rule 34 document request to obtain a copy of Dr. Gibson's report. Again, Defendants had an independent obligation to produce that report under Rule 26(a)(2)(B) because they have designated Dr. Gibson as a testifying expert.

that subdivision (b)(6)'s non-exclusivity language—i.e., that examiners' reports are discoverable not only under Rule 35(b) but under other rules as well—actually works in their favor, requiring Plaintiffs to produce of report from Dr. Rothke even if Defendants never made a Rule 35 "request" for Dr. Gibson's report.[26] *See* [DE 26 at 6 ("discovery should not depend upon whether the person examined demands a copy of the report")]; DE 28 at 3 ("[E]ven if Plaintiff had not made a request for the examiner's report under FRCP 35(b)(1), a party defending against a personal injury claim should have the maximum opportunity for discovery open to him and [ ] an adversary's decision not to request a copy of the report of his examination under Rule 35(b)(1) should not necessarily bar discovery, under Rule 34, or otherwise, of his adversary's personal medical reports.")].

In the *Weir* case cited by Defendants and discussed previously, *see* footnote 12, *supra*, the plaintiff argued that he did not need to make a request under Rule 35 because he would have been entitled to receive the examiner's report in any event under Federal Rule of Civil Procedure 34. *Wier*, 233 F. Supp. at 659.[27] In rejecting this argument, the court stated that, where a Rule 35 examination takes place and the defendant furnishes the plaintiff with a copy of the report of the examiner, "the applicable rule is 35(b)(1) rather tha[n] Rule 34," reasoning that "[t]hese rules serve

---

[26] In actuality, Defendants do not clearly separate their argument based on their assertion that Plaintiffs did make a Rule 35 request from their argument that Plaintiffs did not need to have made a request for Defendants to be entitled to a report from Dr. Rothke. Yet, Defendants also do not appear to be arguing that whether Plaintiffs made a Rule 35 request is irrelevant to the outcome of their motion. Regardless of this ambiguity, the Court finds it helpful to address two distinct arguments, one that depends for its success on the Court agreeing that a Rule 35 request was made (which the Court found in the previous section did not occur), and the other, assuming that such a request was not made and arguing that the Court should nonetheless find a reciprocal duty to disclose on Plaintiffs' part.

[27] The argument was made in an effort to avoid the court's holding that a court order entered upon motion filed by the plaintiff and instructing the defendant to deliver a copy of the examiner's report to plaintiff constituted a "request" by plaintiff under Rule 35 triggering the mutual disclosure obligations of that rule.

separate and distinct purposes, and one of the instances in which Rule 35(b)(1) is preemptive of Rule 34 is when reciprocity of exchange is sought." *Id.* This portion of *Weir* is no longer good law as the 1970 amendments to Rule 35 added subsection (b)(6), which, the advisory committee notes confirm, establishes that contrary to the *Weir* decision "Rule 35(b) is *not* preemptive" of other discovery rules. Fed. R. Civ. P. 35, advisory committee notes, 1970 amendment (emphasis added). As discussed in the previous section, the fact that subsection (b)(6) of Rule 35 provides that the disclosure rules in Rule 35 are not preemptive supports *Plaintiffs'* arguments in this case. But Defendants attempt to use the same principle to argue they are entitled to a report from Dr. Rothke, citing the Third Circuit's decision in *Buffington v. Wood*, 351 F.2d 292 (3d Cir. 1965).

 *Buffington*, like *Weir*, also was decided before subsection (b)(6) was added to the rule, but it held, contrary to *Weir* and consistent with the later amended Rule 35(b)(6), that Rule 35's disclosure rules should not be interpreted as being preemptive of other rules that might apply to require disclosure of a medical examiner's report. The issue in *Buffington* was whether Federal Rule of Civil Procedure 16 authorized the district court to require a mutual exchange of medical examination reports where the plaintiff had never requested a copy of the report of the defendant's Rule 35 examiner and objected to turning over his own medical examiner's report. The court held that "the procedure outlined in Rule 35(b) merely makes available a method by which an examined party can avoid having to show cause for receipt of the report of his adversary's examination of him, if he is willing to waive any privilege that may be of benefit to him. Rule 35(b) was framed with this situation in mind and was not intended as the exclusive method for medical report exchange." *Id.* at 296.

 In reaching the conclusion that the production requirements in Rule 35 were not exclusive, the *Buffington* court made the following observations, which Defendants quote:

> Merely because he has been able to medically examine his adversary, that adversary's decision not to request a copy of the report of his examination under Rule 35(b)(1) should not necessarily bar discovery, under Rule 34, or otherwise, by the defending party, of his adversary's personal medical reports. Much may be learned over and above that revealed by a party's own examination of his adversary, by discovery of that claimant's personal medical reports. The directive of the Federal Rules to eliminate surprise from litigation demands that we construe them reasonably to facilitate this goal and maximize pre-trial exchange of materials.

*Id.* at 297.

Defendants' reliance on *Buffington* overlooks the fact that the issue in that case was whether the district court had the discretion under Rule 16 to order a mutual disclosure of medical reports. The court held that the district court did have such discretionary authority, which was not preempted by Rule 35. But here Defendants have not pointed to Rule 16 or any other rule outside of Rule 35 under which they contend the Court has the authority to require mutual disclosure, let alone order Dr. Rothke to produce and deliver a report not currently in existence. As far as the Court can tell, *Buffington* did not involve a non-testifying expert witness, and the medical examinations that the plaintiff did not want to disclose in that case were not subject to any privilege. Under these circumstances, the court held that Federal Rule of Civil Procedure 16 gave the district court the discretion to order the mutual disclosure of medical examination reports. *Id.* ("Having determined that there are methods other than Rule 35(b)(1) which may be used to facilitate an exchange of medical reports, we now consider whether Federal Rule 16 is one of these alternative approaches under the circumstances of this case.").

The court further explained on reconsideration that "the District Court's order based on Rule 16 was within its power in this case absent, among other things, persuasive argumentation by petitioners that good cause was lacking for the exchange," and also given that "the District Court's order [did not] contemplate[ ] discovery of anything but the factual and historical material in the

reports." *Id.* at 299 (internal quotation marks omitted) (on petition for rehearing). Here, Defendants have not limited their request to "factual and historical material." In addition, Plaintiffs *have* argued that good cause is lacking for the exchange, i.e., the protection afforded by Rule 26(b)(4)(D). And finally, Defendants have not made any argument for "exceptional circumstances" to avoid Rule 26(b)(4)(D) protection. Absent a showing by Defendants that either disclosure was required by Rule 35 because a "request" was made by Plaintiffs within the meaning of that rule, or because of "exceptional circumstances" within the meaning of Rule 26(b)(4)(D)(ii), Defendants have pointed to no authority in the Federal Rules by which the Court can grant Defendants the requested relief.

Defendants' argument, instead, is once again one of reciprocity untethered to any particular rules. Moreover, their reciprocity argument again erroneously equates privileged information (Dr. Rothke's examination results and opinions) with non-privileged information (Dr. Gibson's report). It is true, as Defendants' counsel argued at the hearing, that Defendants did not have the absolute right to protect Dr. Gibson from all discovery by declaring him a non-testifying expert, unlike Plaintiffs with respect to Dr. Rothke. That is, even if Defendants had designated Dr. Gibson a non-testifying expert, Plaintiffs still would have had the right under Rule 35(b)(1) to request a report from Dr. Gibson. But Plaintiffs' right to request a report from Dr. Gibson in that hypothetical situation would not be unqualified. For if Plaintiffs requested Dr. Gibson's report in that situation, they would have been deemed to have waived their privilege to not disclose Dr. Rothke's examination results. In that situation, both experts would be non-testifying and disclosures would be mutual, albeit at Plaintiffs' option. That only the examined party has the option of invoking mutual disclosure in the situation of two non-testifying expert witnesses is an imbalance specifically contemplated and endorsed by the rule.

Defendants' counsel also argued that there was an imbalance in the rules in that if Defendants were to now redesignate Dr. Gibson as a non-testifying expert, Dr. Gibson would not be protected from discovery to the same degree as Dr. Rothke because Plaintiffs already have Dr. Gibson's report. But that situation would not be the result of a one-sided application of the disclosure rules but the result of Defendants having waited to redesignate Dr. Gibson after having already delivered his report to Plaintiffs as a testifying expert (as opposed to Plaintiffs redesignation prior to delivering a report). *See* footnote 7, *supra* (citing *Davis,* 2013 WL 2159476, at 5 (citing *S.E.C. v. Koenig*, 557 F.3d at 744)).

Defendants argue in their reply that the applicable rules should not be interpreted so that they would have "no recourse to obtain a like report of a later examination by Dr. Rothke of the same condition," stating that "[s]uch was not the intent of the Federal Rules of Civil Procedure and would be fundamentally unfair to Defendants." [DE 28 at 2]. Yet they ignore Rule 26(b)(4)(D), which states that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D). In other words, the Federal Rules expressly reach a different conclusion regarding the fairness of exactly the result that Defendants say was not intended by the Federal Rules. Defendants' arguments notwithstanding, the Federal Rules do not view this result as an unfair discovery "advantage" for the party who retained the non-testifying expert.

Finally, the Court finds it necessary to comment on an issue that was raised at the hearing regarding the appropriate sanction for Plaintiffs' failure to deliver a report from Dr. Rothke if Rule 35's reciprocity requirements were held to apply in this case. Subdivision (b)(5) of Rule 35 states that, if a party required to deliver a report fails to do so, "the court may exclude the examiner's

testimony at trial." Fed. R. Civ. P. 35(b)(5). In other words, even if the Court were to grant Defendants' motion to compel, the remedy would not be an order compelling Dr. Rothke to prepare a report, but instead an order excluding Dr. Rothke's testimony at trial, a sanction that Plaintiffs would not oppose having indicated by their redesignation that they do not intend to call Dr. Rothke as a trial witness. Defendants acknowledged as much at the hearing, but then stated that they would still want the Court to issue the order under Rule 35 directing Plaintiffs to provide a report, because then they would be able to use that ruling to argue that Plaintiffs waived any privilege they had over Dr. Rothke's examination results pursuant to subsection (b)(4) of Rule 35, thereby rendering Dr. Rothke subject to a deposition. While the issue of whether Defendants can depose Dr. Rothke is not before the Court on their motion to compel, which requests only an order compelling a report, the Court's ruling on the motion to compel is that Rule 35(b) does not apply here because Plaintiffs did not make a request for Dr. Gibson's examination report, and that therefore Rule 26(b)(4)(D) protects Dr. Rothke from discovery absent a finding of exceptional circumstances.

## **CONCLUSION**

For the reasons discussed above, Defendants' Motion To Compel Report Pursuant To Federal Rule Of Civil Procedure 35(b)(3) **[DE 26]** is **DENIED**. The parties are reminded of the telephonic status conference scheduled for **2/21/2023** at **9:30 AM** (Central time) [DE 34] (parties are instructed to dial 877-336-1280 and enter access code 3293676# when prompted to join the conference), at which time the Court will set new discovery deadlines in the case. The parties are **DIRECTED** to meet and confer prior to the status conference, and are also encouraged to file an agreed proposed scheduling order regarding remaining discovery prior to the conference date.

So ORDERED this 10th day of February, 2023.

                                    s/ Joshua P. Kolar
                                    MAGISTRATE JUDGE JOSHUA P. KOLAR
                                    UNITED STATES DISTRICT COURT