UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TERRY LARSON and JAYNE LARSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:20-CV-250-PPS-JEM |
| ) | |
| DAVIDSON TRUCKING, INC., and GARY ) | |
| EIDT, individually and as an employee, of ) | |
| DAVIDSON TRUCKING, INC., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter arises from an automobile accident in Valparaiso where one of the Plaintiffs, Terry Larson, sustained serious injury. His wife, Jayne, also seeks damages for a loss of consortium but we can ignore her claim for now. The issue presently before me requires an analysis of the interplay between Rule 26 and Rule 35 of the Federal Rules of Civil Procedure. In particular, Defendants seek to compel the deposition of Larson's consulting medical examiner. [DE 41]. The Defendants say that Rule 35 commands the deposition be taken; Larson responds that Rule 26 controls the matter and prohibits the deposition. For the reasons outlined below, I agree with Larson and will therefore deny the motion to compel.

**Background**

A.   **The Parties' Contentions**

Defendants' motion concerns the taking of two expert depositions. Dr. Douglas Gibson, Defendants' testifying expert, conducted a medical examination on Larson. The

saga began when Larson sought to depose Dr. Gibson. Larson argues—and Defendants do not dispute—that Larson has the right to depose Dr. Gibson as a testifying expert. FED. R. CIV. P. 26(b)(4)(A). But if Larson does depose Dr. Gibson, then, according to the Defendants, they are entitled to depose Dr. Steven Rothke, a *consulting* neuropsychologist who Plaintiff does not intend to call as a witness at trial but who also performed an examination on Larson. This is Defendants third bite at the Rothke apple. On two other occasions the Defendants sought discovery from Dr. Rothke, but those attempts were rebuffed by then Magistrate Judge Kolar. [DE 35, 38]. Familiarity with Judge Kolar's comprehensive opinions on the subject is assumed here.

Larson objects to a deposition of Dr. Rothke, citing Federal Rule of Civil Procedure 26(b)(4)(D):

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

FED. R. CIV. P. 26(b)(4)(D).

There are two exceptions to the prohibition on taking discovery from a consulting expert: 1) when it is permitted by Rule 35(b), FED. R. CIV. P. 26(b)(4)(D)(i); and 2) if there are "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means," FED. R. CIV. P. 26(b)(4)(D)(ii). Defendants assert that a deposition of Dr. Rothke falls under both exceptions.

Defendants tell me that taking Dr. Rothke's deposition is permitted under the (D)(i) exception because his deposition is permitted by Rule 35(b)(4). That provision states:

> By requesting and obtaining the examiner's report, *or by deposing the examiner*, the party examined waives any privilege it may have—in that action or any other action involving the same controversy—concerning testimony about all examinations of the same condition.

FED. R. CIV. P. 35(b)(4) (emphasis added). According to Defendants, Rule 26(b)(4)(D)(i) and Rule 35(b)(4) together provide that, by choosing to depose Dr. Gibson, Larson waives the consulting expert protection in Rule 26 for Dr. Rothke.

Larson rejects Defendants' Rule 35(b)(4) waiver argument, pointing out that the last sentence in subsection (b)(6) of Rule 35 states that "[t]his subdivision does not preclude obtaining an examiner's report or deposing an examiner under other rules." FED. R. CIV. P. 35(b)(6). The Advisory Committee Notes to Rule 35 state that the language "does not preclude" in subsection (b)(6) was added to make clear that Rule 35(b) "is not preemptive" of other discovery rules. *See* FED. R. CIV. P. 35(b)(6), 1970 Amendment to Subdivision (b)(3).[1] This means, according to Larson, he is allowed to depose Dr. Gibson under Rule 26(b)(4)(A) without triggering either the (D)(i) exception in Rule 26(b)(4)(D) or the waiver principle in Rule 35(b)(4).

**B.   The Previous Motion to Compel a Report from Dr. Rothke**

As noted above, former Magistrate Judge Kolar was presiding over discovery in this matter when the parties' dispute over Dr. Rothke first erupted. Dr. Rothke was

---

[1] The current subsection (b)(6) was originally codified in subsection (b)(3) of Rule 35.

3

originally a retained expert, but he was later redesignated a consulting expert. Everybody agrees that Dr. Rothke examined Larson but did not issue a report. Shortly after Dr. Rothke's redesignation as a consulting expert, Defendants sought to compel Dr. Rothke to produce a report of his medical examination. Magistrate Judge Kolar denied that motion. [DE 35]. Defendants then filed a motion for reconsideration, which Magistrate Judge Kolar also denied. [DE 38]. Defendants did not appeal either of Magistrate Judge Kolar's decisions to me. So, the ship has sailed on those issues.

I expected that the current motion would make arguments based solely on the second clause of Rule 35(b)(4) "by deposing the examiner." Indeed, Defendants start off their motion by suggesting they intend to do just that. *See* [DE 41 at 6 (Defendants state they "understand and appreciate" Magistrate Judge Kolar's prior rulings denying their motion to compel an examiner's report but assert that they "seek to distinguish" those prior rulings)]. But the report requirement in Rule 35 still plays a large role in the parties' analysis of the deposition issue. So it makes sense to take a moment at the start to review Defendants' arguments and Magistrate Judge Kolar's analysis of those arguments on the report issue.

Defendants' arguments for their motion to compel a report were similar to their current arguments seeking to compel a deposition. Defendants claimed they were entitled to an expert report from Dr. Rothke because Larson had requested and obtained Dr. Gibson's report under Rule 35(b)(1). By obtaining Dr. Gibson's report, Defendants argued, Larson triggered the reciprocity principle in Rule 35(b)(3) which states that after "delivering the [examiner's] report[], the party who moved for the

4

examination may request—and is entitled to receive—from the party against whom the examination order was issued like reports of all earlier or later examinations of the same condition." *Id*. Defendants also cited the waiver of privilege in Rule 35(b)(4), which is triggered both "by requesting and obtaining the examiner's report," and "by deposing the examiner." FED. R. CIV. P. 35(b)(4). Defendants contended that, even though Dr. Rothke was designated a consulting expert, the (D)(i) exception in Rule 26(b)(4)(D) applied because Rules 35(b)(1), (b)(3), and (b)(4) required Dr. Rothke to prepare and deliver a report of his examination results.

In rejecting these arguments, Magistrate Judge Kolar held that the reciprocity requirement in Rule 35(b)(3) is dependent on Larson first having made a request for a report by Defendants' examiner (Dr. Gibson) pursuant to Rule 35(b)(1). Judge Kolar found that Larson did not obtain a copy of Dr. Gibson's examination report by making a Rule 35(b)(1) "request"; instead, he was served with that report pursuant to the expert discovery requirements in Rule 26(a)(2) for retained testifying experts. Magistrate Judge Kolar also held that the last sentence of subsection (b)(6) of Rule 35 confirmed that Larson was entitled to invoke Rule 26(a)(2) for purposes of obtaining Dr. Gibson's report, without triggering application of Rule 35, and thereby avoid any reciprocity requirement or waiver rule found in Rule 35(b) as to Dr. Rothke. Magistrate Judge Kolar concluded that, because Rule 35(b) was not triggered by Larson obtaining Dr. Gibson's report, the "as provided in Rule 35(b)" language in the (D)(i) exception to the consulting expert exemption in Rule 26(b)(4) did not allow for Defendants to demand that Dr. Rothke prepare and deliver a report.

5

**Discussion**

Having been twice denied by Judge Kolar, Defendants are back again—this time seeking to depose Larson's consulting expert, Dr. Rothke. The issue raised by Defendants' motion arises out of the fact that Dr. Gibson and Dr. Rothke are both specially retained experts who also happen to be medical examiners. As retained experts, they are subject to the requirements of Rule 26(a)(2) and (b)(4). As medical examiners, they are also subject to the requirements of Rule 35.[2] Defendants' motion therefore requires me to interpret and apply those two rules to the facts of this case.

Let's start with some basics. The Federal Rules of Civil Procedure are construed like any statute. *See Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989). Interpretation "begin[s] with 'the language [of the statute] itself[.]'" *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (7th Cir. 2013) (quoting *McNeill v. United States*, 563 U.S. 816, 819 (2011)). I must "accord words and phrases their ordinary and natural meaning and avoid rendering them meaningless, redundant, or superfluous; … view words not in isolation but in the context of the terms that surround them; … favor the more reasonable result; and … avoid construing [the statute] contrary to the clear intent of the statutory scheme." *Id.* (internal quotation marks omitted) (quoting *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353–54 (7th Cir. 1996) (citations omitted)). "When the language of a

---

[2] Defendants sometime refer to Dr. Rothke as a "Rule 35 medical examiner," *see* [DE 43 at 6], when he is not. A Rule 35 medical examiner is someone who conducts a medical examination by court order (or, as happened here, at the request of the opposing party, *see* FED. R. CIV. P. 35(b)(6)). *See Grogan v. Kumar*, 873 F.3d 273, 280–81 (5th Cir. 2017) (plaintiff may not use Rule 35 to "provide himself with an expert witness"). Dr. Rothke examined Plaintiff at Plaintiff's request, so he is "*an* examiner," FED. R. CIV. P. 35(b)(6), but he is not "*the* [medical] examiner" referred to in Rule 35(b)(1) – (b)(4).

6

statute is plain, [I must] enforce it according to its terms." *Id.*; *see also United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008). But in doing so I am mindful "that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme. [I] must … interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into a harmonious whole[.]" *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (internal quotation marks and citations omitted).

As noted above, there are two exceptions to the prohibition on deposing consulting experts under Rule 26. First, there is the Rule 26(b)(4)(D)(i) exception "as provided in Rule 35(b)." Second, there is the "exceptional circumstances" exception set out in Rule 26(b)(4)(D)(ii). Defendants contend that both exceptions authorize the deposition of Larson's consulting expert. I disagree and will take up each argument in turn below.

**A. The 26(b)(4)(D)(i) "as provided in Rule 35(b)" Exception**

At first blush, it might seem like the parties' dispute is easily resolved in Defendants' favor by the plain language of Rule 26(b)(4)(D)(i) and Rule 35(b)(4). Rule 26(b)(4)(D)(i) allows for discovery against a consulting expert "as provided in Rule 35(b)." And if I substitute the names of the parties for the generic terms in Rule 35(b)(4), it states on its face that, "by deposing [Dr. Gibson], [Larson] waives any privilege [he] might have … concerning testimony about [Dr. Rothke's] examination[ ] of the same condition." FED. R. CIV. P. 35(b)(4).

But the Supreme Court has directed that, "[i]n determining whether Congress has specifically addressed the question at issue, a reviewing court should not confine itself to examining a particular statutory provision in isolation," because "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. *Food & Drug Admin.*, 529 U.S. at 132–33 (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of statutory context")); *Vendetti v. Compass Env'l, Inc.*, 559 F.3d 731, 733 (7th Cir. 2009) ("All interpretation is contextual, and the body of knowledge that goes by the name of 'common sense' is part of the context of interpreting most documents....'").

So, in determining the plain meaning of the language in Rule 35(b)(4) "by deposing the examiner," I must be guided not only by that language but by the design of Rules 26 and 35 as a whole. *Berkos*, 543 F.3d at 396. And looming large in this dispute is the calculated design of the expert discovery rules, which treat consulting experts "very differently from those who are expected to be called at trial." Wright & Miller, 8A FED. PRAC. & PROC. CIV. § 2032 (3d ed.).

On the one hand, as to testifying experts, Rule 26 provides for "detailed reports and routine depositions" to allow parties the ability to prepare for, and effectively cross–examine these important witnesses. *Id. See also* FED. R. CIV. P. 26, Advisory Committee Notes, 1970 Amendment, 48 F.R.D. 487, 503-04. In adopting these procedures, the Advisory Committee considered and rejected the various reasons for past judicial restrictions or outright prohibitions on expert discovery. Thus, the Committee "repudiate[d]" cases that had held "an expert's information privileged

simply because of his status as an expert." FED. R. CIV. P. 26, Advisory Committee Notes, 1970 Amendment, 48 F.R.D. 487, 504-05. The Committee also rejected prior decisions which found expert information to be work-product. *Id.* at 505. Lastly, the Committee rejected the doctrine of "unfairness" that had been applied by some courts, i.e., "the fear that one side will benefit unduly from the other's better preparation." *Id.* at 504. The Committee agreed instead with the view that "it is not unfair for either party to know in advance of trial what the other party intends to prove, what opinions his opponent's experts hold, the method by which those opinions were formulated, and the facts upon which they are based." *United States v. 23.76 Acres of Land, More or Less, in Anne Arundel Cnty., State of Md.*, 32 F.R.D. 593, 597 (D. Md. 1963) (cited in Advisory Committee Notes).

On the other hand, consulting experts were treated as a horse of different color. For consulting experts, trial preparation was not an issue. *See* FED. R. CIV. P. 26, Advisory Committee Notes, 1970 Amendment, 48 F.R.D. 487, 504-05. The factors that justify discovery from testifying experts do not apply to experts who are merely consulting with the lawyers as they prepare their case. Wright & Miller, 8A FED. PRAC. & PROC. CIV. § 2032 (3d ed.). Discovery from consulting experts "would tend to deter thorough preparation of the case and reward those whose adversaries were most enterprising." *Id.*

This carefully conceived scheme for treating testifying experts differently from consulting experts when it comes to discovery, would be overridden if, as Defendants argue, Rule 35(b)(4) can be read as forcing a plaintiff to waive the protection normally

9

afforded a consulting medical examiner if he wants to exercise his right to depose his opposing party's testifying expert who also happens to be a medical examiner. Yet Defendants argue that is exactly what was intended by the "as provided in Rule 35(b)" language in Rule 26(b)(4)(D)(i). But this ignores the fact that there is no qualification in Rule 26(b)(4)(A) concerning the right to depose a testifying expert. The "as provided in Rule 35(b)" language qualifies the consulting expert privilege, but one would expect that if the right to depose a testifying expert can be subject to other conditions, that would be clearly spelled out in Rule 26(b)(4)(A) itself, particularly given the Committee's findings regarding how essential discovery from testifying experts is. Indeed, in light of the Committee's emphasis on the importance of deposing testifying experts in order to adequately prepare for trial, it is not obvious why the Committee would have drafted the rules to require the examined party under Rule 35 to make a choice of either foregoing that preparation or allowing his opponent to depose his consulting expert. If, as Defendants argue, the goal is full disclosure of medical examiners on both sides, Defendants' interpretation of the rules does not necessarily lead to that result. Instead, the result could just as likely be that neither expert is deposed.

The Committee Notes make clear that the expert discovery rules as a whole were adopted to "abolish the notion that an expert's information was protected … as 'privileged' … and to insert in [its] place a rule of application based on the doctrine of 'unfairness.'" *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.*, 415 F. Supp. 1122, 1137 (S.D. Tex. 1976) (citing the Committee Notes, which state that the new expert discovery rules

"*repudiate*" cases that had held "an expert's information *privileged* simply because of his status as an expert," FED. R. CIV. P. 26, Advisory Committee Notes, 1970 Amendment, 48 F.R.D. 487, 504-05 (emphasis added)). The word "privilege" does not appear in Rule 26(b)(4)(D), and, apparently, its omission was intentional: Courts repeatedly have noted that, per the Advisory Committee Notes, "[t]he concept of privilege … does not apply to the discovery of a consulting expert's opinion." *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. P'ship,* 154 F.R.D. 202, 206 n.6 (N.D. Ind. 1993). The consulting expert rule is an "exemption" from discovery "based on the concept of unfairness" rather than a "privilege." *Kingdom Auth. v. City of Rockford*, 2011 WL 245585, at \*3 (N.D. Ill. Jan. 26, 2011).

So where does that leave Rule 35(b)(4), which refers to a waiver of "privilege"? It seems pretty clear, as Defense counsel acknowledged during oral argument, that Rule 35(b)(4) was drafted with state evidentiary privileges in mind, such as the patient-physician privilege. *See, e.g., Buffington v. Wood*, 351 F.2d 292, 296 (3d Cir. 1965); 7 MOORE'S FED. PRAC.-CIVIL, § 35.12[5] ("Privileges that have been waived by obtaining a copy of the examination report cannot be reasserted under state law"—referring to discovery and evidentiary privileges, including the physician-patient and psychotherapist-patient privileges); Wright & Miller, 8B FED. PRAC. & PROC. CIV. § 2237 (3d ed.) (similar). Here, Larson is not asserting physician-patient privilege as the reason for protecting Dr. Rothke from being deposed, nor could he, because in Indiana a plaintiff in a personal injury suit waives the physician-patient privilege as to those matters that have a "direct medical relevance to the claim, counterclaim, or defense

11

made." *Jenson v. Lowe's Home Cntrs., LLC*, No. 1:22-CV-1100-JRS-CSW, 2024 WL 1340324, at *13 (S.D. Ind. Mar. 29, 2024) (internal quotation marks and citations omitted).

Finally, explanations of Rule 35(b) by legal commentators reinforce the idea that, aside from an examined plaintiff's absolute right to request and receive the Rule 35 medical examiner's report, the differential treatment between testifying and consulting experts set out in Rule 26 should be maintained:

> [I]f examination reports are not privileged but were created in anticipation of litigation or preparation for trial, they may be discovered only under the provisions of Rule 26(b)(4), …[which] distinguishes between cases in which the examining expert is expected to be called at the trial, and cases in which it is expected that the examiner will not be called, in which event the report is discoverable only under Rule 35(b), or on a showing of 'exceptional circumstance under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

7 MOORE'S FED. PRAC. - CIVIL, § 35.12[6] *See also* FED. R. CIV. P. 35, Advisory Committee Notes, 1970 Amendment, Subdivision (b)(3) ("To be sure, if the report is privileged, then discovery is not permissible under any rule other than Rule 35(b) and it is permissible under Rule 35(b) only if the party requests a copy of the report of examination made by the other party's doctor.")

Defendants ignore all this background regarding Rule 26's deliberate scheme to treat testifying and consulting experts differently and focus instead on the purpose, language, and design of Rule 35. They argue that the intent of Rule 35 is to "preserve the equal footing of the parties to evaluate the plaintiff's [physical or mental condition]." [DE 41 at 9 (quoting *Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 419

(S.D. Tex. 2012)]. But that description of the rule's purpose refers primarily to its essential feature, which is the ability of a party to compel an opposing party to undergo a medical examination. *See* FED. R. CIV. P. 35(a)(1). That purpose has been served here—Defendants were able to evaluate Larson through Dr. Gibson's examination.

Defendants contend that their ability to evaluate Larson is not on an "equal footing" if Larson can depose Dr. Gibson, but they cannot depose Dr. Rothke. But that disparity of treatment is exactly what is sanctioned by Rule 26(b)(4)'s deliberate differentiation between consulting and testifying experts. The issue is whether the intent was to eliminate that disparity for medical examiners. Defendants' argument presupposes, rather than establishes, that there was such an intent. To the extent that their argument is based on a view that Rule 35 serves some sort of all-encompassing equalizer of expert discovery for medical examiners, that view is not supported by the case law. Discussions of Rule 35 describe its essential purpose as providing for compelled medical examinations with the concomitant right of the examined person to receive a report by the medical examiner for whom he was compelled to permit an examination.

What's more, that Rule 35 is primarily about an exchange of reports is shown by Defendants' own arguments, which tend to focus on that requirement. For instance, Defendants assert that, whenever a plaintiff receives the examiner's report, a waiver of privilege or reciprocity must *always* be imposed by Rule 35, regardless of whether a Rule 35(b)(1) request for the examiner's report is made by the examined party. [DE 41 at 9]. Not only are Defendants arguing about a waiver based on the report requirements in

Rule 35, which is not at issue on the current motion, but the case law clearly disproves their assertion that a waiver arises *whenever* the Rule 35 examiner's report is turned over to the examined plaintiff.[3]

Defendants also try to distinguish the deposition issue from the reports issue, asserting that, while the waiver for reports requires that a report has been requested and obtained, the waiver for depositions has no "request" precondition for it to be triggered. This argument supposes that (b)(4) contains two separate waivers, which operate independently of each other such that the examined party could be found to have not waived any privilege based on receiving the examiner's report while at the same time to have waived privilege by deposing the examiner. That's not at all sensible. More to the point, the commentary to Rule 35 makes it plain that there is only a single waiver in (b)(4), and that waiver is triggered by a request for the examiner's report. *See* Wright & Miller, 8A FED. PRAC. & PROC. CIV. § 2237 (3d ed.) ("*[B]oth* the exchange-of-reports provision of Rule 35(b)(l) *and* the waiver-of-privilege provision of Rule 35(b)(4) *are dependent on a request* by the examined party for a report of the examination. *If that party makes no request*, he or she cannot be required to provide copies of his or her own reports and *the waiver provision of Rule 35(b)(4) does not come into play*." (emphasis

---

[3] *See, e.g., Benning v. Phelps*, 249 F.2d 47, 48 (2d Cir. 1957) (per curiam) (holding that plaintiff had no reciprocal obligation under Rule 35 because the plaintiff "received copies of defendants' reports pursuant to an order of the court, and not pursuant to his own request"); *Hardy v. Riser*, 309 F. Supp. 1234, 1236 (N.D. Miss. 1970) (holding that "[t]he delivery of an unrequested medical report does not satisfy the waiver requirement of Rule 35(b)[(4)]"); *see also Sher v. DeHaven*, 199 F.2d 777, 781 (D.C. Cir. 1952) (stating that the defendant's "mere willingness to furnish [the plaintiff] a report [of defendant's examiner] which [the plaintiff] had not requested … did not entitle [the defendant] under Rule 35 to demand reports of other examinations which [the plaintiff] had undergone on his own account").

added)); 7 MOORE'S FED. PRAC.-CIVIL, § 35.12[5] ("Requesting Report Waives Privilege With Respect to Other Examinations Involving Same Condition"). In other words, the "by deposing the examiner" language is merely an add-on to the "by requesting a report."

This interpretation of Rule 35(b)(4) makes sense in that the examined plaintiff has an absolute right under Rule 35 to demand the examiner's report,[4] but there is no comparable provision granting the examined plaintiff the right to depose the medical examiner. *See House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 246 (N.D. Iowa 1996). (Rule 35 does not "create[ ] an 'entitlement' of the opposing party to depose the medical examiner; "[i]nstead, Rule 35 provides only for the examined party's right to receive the expert's report"). Unlike a request for a report, therefore, a "request" to depose the medical examiner does not entitle the requester to the deposition, and it is that entitlement which, under Rule 35(b)(4), leads to the waiver.

Defendants argue that, unless Rule 35 is interpreted to always impose a waiver or reciprocity if the examined party has obtained a report from the Rule 35 examiner, "[t]here will literally be no incentives for a plaintiff to ever request an examiner's report under Rule 35(b)(1)," and "[f]urther," there would be no circumstances under which a defendant could invoke 26(b)(4)(D)(i)." [DE 41 at 9]. Those assertions are untrue. Where

---

[4] *See, e.g., Crowe v. Nivison*, 145 F.R.D. 657, 658 (D. Md. 1993) ("Rule 35 balances the privacy interests of the party examined with the interest of the party seeking the examination, the judicial system, and society as a whole in arriving at the truth of the matter at issue. In return for suffering an invasion of his person, the examined party is entitled to make use of such information as results from the examination."); *see also* Charles A. Wright and Arthur R. Miller, 8 FED. PRACTICE & PROC.: CIVIL § 2231 ("The person examined has the absolute right, on request, to receive a copy of a detailed written report of the examining physician").

the Rule 35 examiner is also Rule 26 consulting expert, the examined plaintiff would not have access to the Rule 35 examiner's report under Rule 26(a)(2)(B), nor would he have the right to depose the Rule 35 examiner under Rule 26(b)(4)(A). Accordingly, in such a circumstance, the *only* way for the examined plaintiff to obtain the consulting Rule 35 examiner's report would be with a request under Rule 35(b)(1), because, as noted, that rule gives the examined party an absolute right to request and thereby obtain the examiner's report. Therefore, the primary purpose of the Rule 26(b)(4)(D)(i) exception to the consulting expert protection is to uphold that right. *See, e.g., E.N. v. Susquehanna Twp. Sch. Dist.*, No. 1:09-CV-1727, 2011 WL 3163186 (M.D. Pa. July 26, 2011) (where defendants did not intend for their Rule 35 examiner to testify at trial, court holds they were still required to produce an examiner's report upon the plaintiff's request, per the "as provided in" language of Rule 26(b)(4)(D)(i)).

Therefore, contrary to Defendants' argument, there *is* an incentive for a plaintiff to request a Rule 35 examiner's report under subsection (b)(1), and the circumstance in which that incentive exists reinforces the view that the only carve out for medical examiners from the testifying/consulting expert dichotomy of Rule 26 intended by (D)(i) is when the medical examiner is not a Rule 26 testifying expert. That is not the situation here. (Recall that Dr. Gibson is a testifying expert.) That (D)(i) was intended for that situation is further buttressed by the generally accepted rule that, although a consulting Rule 35 medical examiner may be required to provide the examined plaintiff

16

with a report, the examined plaintiff cannot depose the consulting Rule 35 examiner absent showing exceptional circumstances under the (D)(ii) exception.[5]

In short, rather than read the language in Rule 35(b)(4) "by deposing the examiner" literally, it must be construed with other parts of Rule 35 in mind. As discussed, the exchange of reports requirement is the primary focus of Rule 35, not depositions.

Finally, consider the language in subsection (b)(6) of Rule 35 which states that "[t]his subdivision [i.e., Rule 35(b)] does not preclude obtaining an examiner's report or deposing an examiner under other rules." FED. R. CIV. P. 35(b)(6). Dr. Gibson is "an examiner" and Rule 26(b)(4)(A) is an "other rule" under which he can be deposed (because, to repeat, he is both a Rule 35 examiner and a Rule 26 testifying expert.) Therefore, subsection (b)(6) ends up acting as a carve out to subsection (b)(4)'s waiver, so that the waiver is not triggered when discovery is sought and allowed under another rule. Here, as Judge Kolar previously held, Larson obtained discovery against Dr. Gibson under Rule 26, not Rule 35. Therefore, the Rule 35(b)(4) waiver simply doesn't apply because Larson did not request or obtain Dr. Gibson's report under Rule 35 at all.

---

[5] 7 MOORE'S FED. PRAC. - CIVIL, § 35.12[6] ("The taking of a deposition under Rule 35(b)(6) is also subject to the limitations found in Rule 26(b)(4). Thus, a defendant's expert medical witness who has examined the plaintiff can only be deposed by the plaintiff when the defendant actually intends to use the examiner as a trial witness, absent a showing of exceptional circumstances."), *see, e.g., Dunning v. Thomas*, No. 4:20-cv-177-TWP-DML, 2021 WL 4860954 (S.D. Ind. Oct. 19, 2021); *Rawers v. United States*, 488 F. Supp. 3d 1059, 1085 n.29 (D.N.M. 2020); *Downs v. River City Grp., LLC*, 288 F.R.D. 507, 511 (D. Nev. 2013); *Hammons v. Simmons*, No. CIV. A. 3:09CV-217-S, 2010 WL 3490994, at *1 (W.D. Ky. Aug. 31, 2010); *Lehan v. Ambassador Programs, Inc.*, 190 F.R.D. 670, 672 (E.D. Wash. 2000); *but see House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 244 (N.D. Iowa 1996) (citing cases).

Accordingly, the (D)(i) exception to the consulting expert exemption to discovery does not apply.

### B.    The 26(b)(4)(D)(ii) "exceptional circumstances" Exception

As an alternative to their arguments based on Rule 35(b)(4) and Rule 26(b)(4)(D)(i), Defendants argue they should be allowed to depose Larson's consulting medical examiner (Dr. Rothke) because of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(ii). As one might imagine, showing "exceptional circumstances" is a steep climb. Wright & Miller, *supra*, § 2032; *see also Braun v. Lorillard Inc.*, 84 F.3d 230, 236 (7th Cir. 1996) (despite the fact that the consulting expert rule "invites shopping for favorable expert witnesses and facilitates the concealment of negative test results," the "exceptional circumstances" exception to that rule "is a narrow one").

The party seeking the discovery can satisfy that heavy burden in one of two ways. "First, the moving party may show that the object or condition at issue is destroyed or has deteriorated after the non-testifying expert observes it but before the moving party's expert has an opportunity to observe it. Second, the moving party may show there are no other available experts in the same field or subject area." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1152 (N.D. Ill. 2001). Defendants plainly cannot show the second circumstance is met here of there being "no other available experts in the same field or subject area" because they have their own expert, Dr. Gibson.

Instead, Defendants appear to be seeking application of the first condition in arguing that Plaintiffs should be required to at least produce Dr. Rothke's raw testing data, even if he is protected from being deposed. [DE 41 at 10-11]. As an initial matter, everyone seems to admit that Dr. Gibson already possesses that raw testing data from Larson's prior expert (Dr. Morris.) As for Dr. Rothke's raw testing data, Larson correctly points out that it falls within the definition of "facts known and opinions held" by a consulting expert, which is undiscoverable under Rule 26(b)(4)(D). [DE 42 at 11 n.2.] Defendants respond that they should nevertheless be given access to Dr. Rothke's "raw test scores as a means of effectively preparing for [Dr. Gibson's] deposition and/or trial testimony," i.e., "to parry any attack that Dr. Gibson should have given a different test battery," or, "if the raw test scores obtained by Dr. Rothke are substantially similar to those obtained by Dr. Gibson," to contradict "Plaintiff's claims that his condition continues to deteriorate." [DE 41 at 11]. But this argument is entirely lost on me. Preventing a party from using its opponent's consulting expert for these purposes is the whole point of the consulting expert exemption.

Equally unimpressive is Defendants' argument that they should be entitled to depose Dr. Rothke because doing so would be helpful to them. But this "flips Rule 26(b)(4)(D) on its head." *Strobl v. Werner Enters., Inc.*, 577 F. Supp. 3d 960, 969 (S.D. Iowa 2022) (rejecting the defendants' argument that a consulting expert's report was "discoverable because it 'shows there is no brain injury' and is 'vital to the Defendants' case,'" stating that "[r]equiring disclosure when a consulting expert's opinion is

19

unfavorable to the party that obtained it would cause the purpose of the rule to become a basis for defeating it."). *See also Spearman Indus., Inc.*, 128 F. Supp. 2d at 1152 (same).

In sum, the Rule 26(b)(4)(D)(ii) "exceptional circumstances" exception to discovery of consulting experts plainly doesn't apply here.

## Conclusion

For all of the above reasons, Defendants' Motion To Compel Deposition Of Dr. Rothke Pursuant To Federal Rule Of Civil Procedure 35(b)(4) **[DE 41]**, is **DENIED**. The parties are **DIRECTED** to complete Dr. Gibson's Rule 26(b)(4)(A) deposition in the next thirty days, and to appear at a telephonic status conference on **June 6, 2024 at 1:00 pm CST.**

So ORDERED this 29th day of May, 2024.

s/ Philip P. Simon
DISTRICT JUDGE PHILIP P. SIMON
UNITED STATES DISTRICT COURT