UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TERRY LARSON and JAYNE LARSON,    )<br>   )<br>   Plaintiffs,   )<br>   )<br>v.   )   CAUSE NO.: 2:20-CV-250-PPS-JEM<br>   )<br>DAVIDSON TRUCKING, INC., and GARY   )<br>EIDT, individually and as an employee, of   )<br>DAVIDSON TRUCKING, INC.,   )<br>   )<br>   Defendants.   ) | |

## OPINION AND ORDER

This matter arises from an automobile accident in Valparaiso where one of the Plaintiffs, Terry Larson, sustained serious injury. The issue presently before me once again concerns the designation of Terry Larson's expert neuropsychologists, a subject that has chewed up a lot of judicial resources in this case. Larson originally designated his treating neuropsychologist Dr. Jeri Morris as a testifying expert but later moved to substitute Dr. Morris with Dr. Rothke, another neuropsychologist. A while later, Larson took another tack by redesignating Dr. Rothke as a consulting expert, removing him as a testifying expert, and then vociferously fought (and succeeded) in preventing him from having to produce an expert report and from being deposed. Instead of seeking a second replacement testifying neuropsychologist, Larson chose to proceed without one. Larson now seeks to change course once again by re-designating his original neuropsychologist, Dr. Morris, as a testifying expert notwithstanding the fact that expert disclosure deadlines have long since passed. Given this history, with the case set

1

for trial in a couple of months and with settled expectations of who the testifying experts will be, I am loath to change the landscape at this point. For the reasons I discuss below, Larson's request to redesignate Dr. Morris [DE 59] is DENIED.

## Background

After the accident at issue in this case, Terry Larson met with neuropsychologist Dr. Jeri Morris for treatment in October 2020 and November 2021. Larson first disclosed Dr. Morris to Defendants as a testifying expert in Larson's Rule 26(a)(2) initial disclosures on September 21, 2021. [DE 26-1 at 10–12.] Larson disclosed that Dr. Morris would testify that Larson sustained a mild traumatic brain injury in the April 30, 2020, accident. [*Id*. at 10.]

Larson's counsel on May 26, 2022, received word that Dr. Morris was on medical leave with a "guarded" prognosis and may not be able to return to work. [DE 24-1.] They were also told that Dr. Morris could "no longer provide services in any capacity." [*Id*.] As a result of Dr. Morris' indefinite unavailability, Larson moved to substitute Dr. Morris with Dr. Steven Rothke, who is also an expert in neuropsychology. [DE 24.] The Magistrate Judge on June 9, 2022, granted Larson's request to substitute Dr. Rothke as a testifying expert witness and extended the expert disclosure deadline to accommodate the change. [DE 25.]

That's when things went off the rails and an extended discovery fight ensued. After the deadline expired for Larson to disclose Dr. Rothke's report, Larson's counsel emailed Defendants' counsel to notify them that Larson decided to withdraw Dr. Rothke as a testifying expert and convert him to a consulting expert. [DE 27-3.] The

2

implication was that Larson was prepared to proceed to trial without a neuropsychologist. The flip-flopping of Dr. Rothke from a testifying expert to a consulting expert ignited four different motions by Defendants to compel the production of an expert report by Dr. Rothke and to compel a deposition of Dr. Rothke. I will not rehash the exhausting saga of these efforts, but on November 1, 2024, I dismissed the latest effort by Defendants to compel a deposition of Dr. Rothke. [*See* DE 68.] At bottom, each denial of Defendants' motions to compel was premised on the discovery protections afforded to Dr. Rothke because of his designation as a non-testifying, consulting expert.

In the midst of the lengthy battle over the motions to compel Dr. Rothke's deposition, I held a status conference on June 27, 2024, during which I set a deadline of September 30, 2024, to complete any additional depositions. [DE 57.] The Parties later agreed to a Final Pretrial Conference date of December 19, 2024, and a jury trial to begin on January 13, 2025. [DE 58.] Larson now seeks to redesignate Dr. Morris as his testifying expert; he tells me that he learned in mid-July 2024 that Dr. Morris had recovered from her illness and resumed treatment of her patients, which included Larson. [DE 59 at 4–6.]

### **Legal Standard**

"The Federal Rules of Civil Procedure do not expressly dictate the standard a court should use to assess a motion to substitute an expert." *Kaepplinger v. Michelotti*, No. 17 CV 5847, 2021 WL 2633312, at *2 (N.D. Ill. June 25, 2021). Some courts look to Federal Rule of Civil Procedure 16(b) in evaluating whether to allow the substitution of

an expert witness. Courts look to Rule 16 because the party requesting substitution of an expert witness after the end of expert discovery, as is the case here, in effect seeks to modify the current case schedule concerning expert disclosures. Rule 16(b)(4) permits a court to modify a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Lincoln Nat. Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, No. 1:04-CV-396, 2010 WL 3892860, at *2 (N.D. Ind. Sept. 30, 2010). "In making a Rule 16(b) good-cause determination, the primary consideration for district courts is the diligence of the party seeking amendment." *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011); *Stringer v. Cambria Fabshop-Indianapolis, LLC*, No. 1:13-cv-00659, 2015 WL 13632234, at *1 (S.D. Ind. Oct. 2, 2015) ("To demonstrate good cause, a party must show that despite its diligence, the time table could not reasonably have been met.") (citation omitted).

When substitution is permitted, "the substitute expert's report and testimony is frequently limited to the subject matter and theories already espoused by the former expert." *Lincoln Nat. Life Ins. Co.*, 2010 WL 3892860, at *2. This limitation is intended to minimize prejudice to the non-moving party caused by the late introduction of a new expert witness and new expert opinion testimony. Moreover, this limitation on the scope of substitute testimony is consistent with the purpose of substitution, which is to put the moving party in as good a position as they would have been had the original expert performed their job as expected. *See id.* (citing *Adams v. Cooper Indus., Inc.*, No. 03–476, 2007 WL 1075652, at *3 (E.D. Ky. Apr. 5, 2007)). Importantly, substitution is *not* a

4

means to allow a party to designate a superior expert after the deadline for expert disclosures. *Id*.

Other courts analyze a motion to substitute as an untimely expert designation under Rule 26(a) and consider whether to exclude the proposed substitute expert as a discovery violation under Rule 37(c). *See, e.g., Assaf v. Cottrell, Inc.*, No. 10 CV 0085, 2012 WL 245196, at *2 (N.D. Ill. Jan. 26, 2012) ("Rules 26 and 37 guide our inquiry to the extent that the requested substitution is a request to modify the discovery schedule, and to the extent that [the moving party] violated the District Judge's discovery schedule by filing the motion at issue after the [applicable] discovery deadline."). Rule 26(a)(2)(D) provides that "[a] party must make [its expert] disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Courts using the Rules 26 and 37 approach apply a four-factor test to analyze requests to substitute an expert witness after the deadline for discovery: "(1) the surprise or prejudice to the blameless party; (2) any bad faith involved in not producing the evidence earlier; (3) the ability of the offending party to cure resulting prejudice; and (4) the amount of disruption to the trial that would result from permitting use of the evidence." *Kaepplinger*, 2021 WL 2633312, at *3 (citing *Spray-Rite Servs. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1245 (7th Cir. 1982), aff'd 465 U.S. 752 (1984)). "In addition

5

to these four factors, to assure full and fair consideration of this motion, we also take into account the effect that denial of the motion would have on the disposition of the case." *Assaf*, 2012 WL 245196, at *3.

## Discussion

The Parties briefed the issue of redesignating Dr. Morris as a testifying expert under the Rule 16(b)(4) standard of "good cause", which, as I noted above, some courts apply to motions to *substitute* an expert witness. And while the Parties did not explicitly cite the four *Spray-Rite* factors relevant to the alternative Rule 37 analysis, the Parties argued the concepts of prejudice, bad faith, and disruption to the trial that those four factors encapsulate. Regardless, courts have commented that the Rule 16(b)(4) and the Rule 37(c)(1) standards for motions to substitute an expert witness are "coexistent." *Kaepplinger*, 2021 WL 2633312, at *4.

This is not a typical motion to substitute. In fact, it isn't a motion to substitute at all; Larson tells me it's a motion to "redesignate." [DE 61 at 4.] That's one way to spin it, I suppose. Another is to say that Dr. Morris is a witness who will offer opinions on matters that Larson previously was willing to forego. Whatever one chooses to call it, I find that the motion to substitute framework should still guide my analysis because Larson is seeking to re-introduce Dr. Morris into the case after the close of expert discovery. As a result, I will analyze the Parties' arguments to the extent that they map onto the Rule 37 factors as I find this four-factor test to be a more robust and helpful guide to the analysis than the bare Rule 16 "good cause" standard. However, the

posture of this being a request to redesignate versus a substitution has important implications for the relevance and weight I will give to the Rule 37 factors.

Beginning with analysis of bad faith, I find this factor to be somewhat neutral. On the one hand, I see no evidence that Larson intended to spring Dr. Morris on Defendants at the last minute. But on the other hand, when Dr. Morris fell ill, Larson identified Dr. Rothke as his substitute expert. Then, after Rothke's report was due, Larson did an about face and decided to classify Dr. Rothke as a consulting expert. He then implied to the court that he was prepared to proceed to trial without an expert neuropsychologist. [DE 59 at ¶9 ("Rather than engage in a battle at trial between paid experts, Plaintiffs decided to redesignate their retained expert as a consulting, non-testifying expert.")] This led us on an extended detour about whether Dr. Rothke, as a consulting expert, could be deposed. Now that discovery has closed and the case is set for trial, Larson is again seeking to change the landscape. While this may not be fairly called "bad faith", any objective observer would have to admit that this "now you see me, now you don't" approach to expert disclosure doesn't feel quite right.

The meat of the disagreement between Larson and Defendants concerning the redesignation of Dr. Morris as a testifying expert concerns potential prejudice. Larson argues that Dr. Morris' redesignation will not prejudice Defendants because they have known Dr. Morris' identity and opinions since Larson's initial expert disclosures on September 21, 2021. [DE 59 at 6.] Indeed, Defendants subpoenaed Dr. Morris' medical records and raw test data and their expert, Dr. Gibson, relied on Dr. Morris' report in preparing his own report. [*Id*.] Finally, Larson argues *he* will be prejudiced if he cannot

7

redesignate Dr. Morris as a testifying expert because Dr. Morris was Larson's treating doctor and plaintiff's expert neurologist Dr. Cristea relied upon Dr. Morris' report in his own treatment of Larson. [*Id.* at 7.]

I see these arguments as a head fake. They incorrectly focus on whether Defendants will be "surprised" by Dr. Morris' testimony. But the real issue is whether Larson should be allowed to lead the Defendants (and the court for that matter) into believing he was prepared to try the case without an expert neuropsychologist and then change his mind after discovery has closed. In other words, the issue is not whether the Defendants will be surprised by Morris' testimony; it's whether their settled expectations that Larson was prepared to try the case without an expert neuropsychologist should be upended a couple months before trial. After all, as the Defendants point out, Larson is in his current position because he chose to redesignate Dr. Rothke as a consulting expert and to proceed to trial without a testifying expert neuropsychologist. [DE 60 at 6.] Why, then, should he not be bound by that pledge? The Defendants have prepared for trial under the assumption that Larson would not be calling a neuropsychologist. To change that at this point strikes me as prejudicial.

What's more, I am dubious of Larson's claims of prejudice should Dr. Morris not be allowed to testify given his previous representations that he was prepared for trial without this category of expert. This is another way of saying that permitting the redesignation of Dr. Morris at this point would put Larson in a better position than his own choices would otherwise dictate. To repeat, the problem is the Defendants have now worked their trial strategy under the assumption that Larson was prepared to go

to trial without a neuropsychologist. This situation is thus unlike the usual posture of an expert witness substitution where the party seeking substitution will be unfairly prejudiced if it is not allowed. *See Kaepplinger*, 2021 WL 2633312, at *5 ("This Court cannot at this point weigh substitution against the parties' original plan and cadre of experts—the original plan is no longer an option."). By contrast, in this case, all of the experts that the Parties chose to proceed to trial with, and designated accordingly, are currently available. Thus, maintaining the status quo is the most sensible approach with trial right around the corner.

Finally, I find that the redesignation of Dr. Morris at this stage would have the potential of disrupting the trial set for January 2025. This 2020 case is set for a final pretrial conference in December 2024 and jury trial in mid-January 2025. During my June 27, 2024, scheduling conference, I set a deadline of September 30, 2024, to complete any remaining depositions. [DE 57.] The Parties have now completed all depositions, expert disclosures, and other discovery. While Defendants have been aware of Dr. Morris since at least September 2021, redesignation of Dr. Morris two months before trial would potentially cause Defendants to significantly alter their trial strategy at a late hour, which did not anticipate Larson's use of a testifying expert neuropsychologist.

In sum, denying Larson's motion will have no dispositive impact on this case. Larson was prepared to try the case without Dr. Morris. This is not a situation where denial of a motion to substitute strips the moving party of the opportunity to use a testifying expert that they had been preparing to use at trial. Finally, given that I am denying Larson's request to redesignate, I need not consider Defendants' request for

9

alternate relief to compel the deposition of Dr. Rothke. In any event, the issue regarding the deposition of Dr. Rothke has been addressed in *four* separate opinions of the court. [*See* DE 35, DE 38, DE 50, DE 68.] To say the least, nothing more needs be said on that issue; I've run out of steam on it.

## Conclusion

For the aforementioned reasons, Larson's Motion to Redesignate [DE 59] is DENIED.

**SO ORDERED**.

ENTERED: November 20, 2024.

/s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**