UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| TERRY LARSON and JAYNE LARSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:20-CV-250-PPS |
| ) | |
| DAVIDSON TRUCKING, INC., and GARY ) | |
| EIDT, individually and as an employee, of ) | |
| DAVIDSON TRUCKING, INC., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This matter arises from an automobile accident in Valparaiso where one of the Plaintiffs, Terry Larson, sustained injury. Trial is set to begin on January 13, 2025. In advance of trial, the Parties have filed numerous motions challenging the anticipated testimony of one another's expert witnesses on various grounds. Here I deal with Defendants' request to exclude the testimony of Larson's medical providers who would assert (1) that Larson suffered a mild traumatic brain injury ("mTBI") or concussion and (2) that any alleged mTBI or concussion was a result of the accident. [DE 65.] For the reasons I discuss below, Defendants' request to exclude the testimony of Larson's medical providers concerning Larson's alleged mTBI or concussion is DENIED.

## Legal Standard

Defendants' challenge to the anticipated testimony of Larson's medical providers takes two forms. First, Defendants argue that Larson's expert disclosures do not meet

1

the requirements of Federal Rule of Civil Procedure 26(a)(2)(C). Second, Defendants argue that Larson's medical providers did not employ a scientifically valid methodology in their diagnosis and opinion on causation concerning Larson's alleged mTBI or concussion. Defendants argue that Federal Rule of Evidence 702 therefore bars the admissibility of their testimony.

Under Rule 26, Parties are required to disclose "to the other parties the identity of any witness it may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). There are two categories of expert witnesses under Rule 26(a)(2). First, there are those experts who are required to prepare a report. The second category of expert witness are those who do not have to provide a report. A treating physician is the paradigmatic example of an expert who falls into this latter category. This is because treating physicians are not retained for litigation purposes. Rather, they are seen by plaintiffs to solve a medical problem. Here's what the Rule requires from this category of expert:

> (C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

The categorization into the two types of experts has not always been the case. In December 2010, Rule 26 was amended to add Rule 26(a)(2)(C) and to make explicit the

differentiation between experts who were and were not required to provide a full report under Rule 26(a)(2)(B). The Advisory Committee explained the purpose of the creation of Rule 26(a)(2)(C) as follows:

> **Subdivision (a)(2)(C).** Rule 26(a)(2)(C) is added to mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions. This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.
>
> This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B).
>
> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705. Frequent examples include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony. Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C). The (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present.

Fed. R. Civ. P. 26 advisory committee notes to 2010 amendment.

If a party fails to abide by Rule 26(a)'s disclosure rules for expert witnesses, Rule 37 authorizes a court to bar the witness from testifying. *See* Fed. R. Civ. P. 37(c). Lesser sanctions are also available. *Id*.

As for Rule 702, the treatment of expert testimony changed dramatically when the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) made judges instead of juries the principal gatekeeper of expert testimony. The case led to an important amendment to Rule 702. The Rule now authorizes testimony by an expert

3

who is qualified "by knowledge, skill, experience, training, or education" where (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." *Downing v. Abbott Labs.*, 48 F.4th 793, 808-09 (7th Cir. 2022) (quoting Fed. R. Evid. 702).

There's a three-step process in determining the admissibility of expert testimony under Rule 702: I must (1) review the proffered expert's qualifications; (2) then look at the reliability of the expert's methodology; and (3) determine its relevance. *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 872 (7th Cir. 2021); *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017).

Step one evaluates, as Rule 702 provides, the expert's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. At step two, concerning reliability, courts may evaluate the following non-exhaustive list of factors: "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Gopalratnam*, 877 F.3d at 779 (quotation and citation omitted). Finally, at step three courts evaluate whether "the expert testimony will assist the trier of fact." *Robinson v. Davol Inc.*, 913 F.3d 690, 695 (7th Cir. 2019). This entails evaluation of

4

"whether the proposed scientific testimony fits the issue to which the expert is testifying." *Id.*

As the party seeking to introduce the testimony, Larson has the burden to show, by a preponderance standard, that the anticipated testimony of his medical providers meets the *Daubert* standard. *Downing*, 48 F.4th at 809. Importantly, "[t]he rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *See Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F.Supp. 2d 1104, 1110 (N.D. Ill. 2005) (citation omitted).

## Discussion

I will note at the outset that Defendants' motion seeks, in part, to exclude potential testimony from Dr. Jeri Morris. At the time Defendants filed this motion, I had not yet resolved Larson's motion to redesignate Dr. Morris as a testifying witness. I subsequently denied Larson's request to redesignate Dr. Morris on November 20, 2024. [DE 74.] Given that Dr. Morris is no longer a testifying witness, Defendants request to exclude Dr. Morris' testimony is moot. I will proceed with consideration of Defendants' motion as it relates to the three remaining medical providers identified in their motion to exclude.

### Rule 26(a)(2)(C) Challenge

Defendants allege that Larson's expert disclosures are deficient under Rule 26 in two ways. First, Defendants argue that Larson's disclosures fail to provide the level of

5

factual detail required by Rule 26(a)(2)(C). Second, Defendants argue that Larson's disclosures on causation are devoid of any evidence that his medical providers employed an acceptable methodology for diagnosing mTBI and linking any mTBI to the accident. I will first address Defendants' arguments concerning Larson's Rule 26(a)(2)(C) disclosures.

The Parties do not dispute that Larson's medical providers are properly classified as Rule 26(a)(2)(C) expert witnesses given that they are non-retained experts. This category of expert disclosure need only include: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). This is a modest standard. Indeed, the Advisory Committee Notes make clear that "[t]his disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)." Fed R. Civ. P. 26(a) advisory committee notes to 2010 amendment. This is because these kinds of "witnesses have not been specially retained and may not be as responsive to counsel as those who have." *Id*. Thus, courts ought not require "undue detail" in the expert disclosure. *Id.*

Defendants challenge to the disclosures of Larson's medical providers relies on the American Congress of Rehabilitation Medicine's 2023 updated Diagnostic Criteria for Mild Traumatic Brain Injury (the "ACRM mTBI Criteria"). Defendants allege that Larson's medical provider disclosures failed to (1) provide a basis for a "plausible mechanism of injury"; (2) provide a basis for the immediate onset of clinical signs or

6

symptoms; and (3) disclose any other possible diagnostic criteria that the medical providers used instead of the ACRM mTBI Criteria. In response, Larson does not explicitly address Defendants' use of the ACRM mTBI Criteria and instead argues that the disclosures note that Larson's medical providers based their opinions on their education, training, experience, and consultation with Larson. The question here is whether that is enough.

The full disclosures for Larson's three remaining medical provider expert witnesses—Dr. Kimberly Perry, Dr. Richard Cristea, and Jamie Kaufman, SLP—can be found in Exhibit 1 to Defendants' motion. [*See* DE 65-1 at 7–11.] I find Larson's synthesis of the substance of these disclosures in his response to be helpful and list them below:

- Kimberly Perry, M.D.: Terry was involved in a crash that consisted of a semi-truck "running through a red light spinning Mr. Larson's car around about 200 degrees and causing him to strike his head near the left temporal area." The crash "likely caused Mr. Larson to suffer an acceleration-deceleration type injury in which the brain collides with its surrounding bony skull, resulting in brain damage." Her "findings and Mr. Larson's cognitive, physical and motive symptoms are consistent with, and a likely result of, the mTBI he sustained" in the crash. Terry "continues to suffer from headaches" and other "cognitive, physical and emotive symptoms" consistent with an mTBI that he never exhibited prior to the crash. [DE 65-1, Ex. 1, pp. 7–8].

- Richard Cristea, M.D.: Terry was involved in a crash on April 30, 2020, that resulted in an mTBI, which is permanent. Dr. Cristea's history, examination, and testing indicate "the likely etiology of [Terry's] mTBI is coup-contrecoup brain damage suffered in the crash as well as diffused axonal injury," and the consequences generally of an mTBI are physical, cognitive, and emotive, and Terry "manifests impairment in all three of these domains as a result of his mTBI." Terry's impaired memory, cognition and awareness, as well as his

7

chronic headache pain and emotive features of his mTBI have, and will likely "continue to significantly and deleteriously impact his activities of daily living." [DE 65-1, Ex. 1, pp. 8–10].

- <u>Jaime Kaufman, SLP</u>: Terry was involved in a crash on April 30, 2020, that resulted in an mTBI, which is permanent. Terry's history, examination and testing indicate the likely etiology of his mTBI is "coup-contrecoup brain damage suffered in the crash as well as diffuse axonal injury." Terry's presentation is consistent with the "findings and complaints generally seen with brain- injured patients e.g., pain, fatigue, difficulty falling asleep and sleep disruption, difficulty concentrating, impaired memory, slowed mental processing and emotional lability, anxiety, depression or impaired enjoyment of life." Terry "manifests impairment in the cognitive, emotive and physical domains which are the likely result of his mTBI." [DE 65-1, Ex. 1, pp. 10–11].

[DE 69 at 8–9.]

I note with some frustration that Defendants waited more than three years (and essentially on the eve of trial) to challenge the sufficiency of Larson's September 2021 Rule 26(a)(2)(C) disclosures. Regardless, I find that the disclosures for each of Larson's medical providers satisfies the requirements of Rule 26(a)(2)(C). All that is required is a "a brief account that states the main points of the entirety of the anticipated testimony." *Hayes v. Am. Credit Acceptance, LLC*, No. 13–2413-RDR, 2014 WL 3927277, at *3 (D. Kan. Aug. 12, 2014) (citation omitted). The disclosures must provide a basis for the "how" and the "why." *Id*. Disclosures "must contain more than mere passing reference to the care a treating physician provided." *Rodriguez v. Am. Multi-Cinema, Inc.*, No. 2:17-cv-455, 2020 WL 8768315, at *2 (N.D. Ind. Nov. 2, 2020).

In *Rodriguez*, cited by both Parties, the court found that the plaintiff's Rule 26(a)(2)(C) disclosure failed to provide the facts that led two testifying doctors to reach their conclusions. *Id*. at *4. Specifically, the court found that while the doctors' summaries provided an overview of the *topic* of their anticipated testimony, the disclosures did not provide *facts or bases* to support that the plaintiff's injuries were "permanent" or had "caused her to lose significant ability to ambulate." *Id*. Likewise, in *Slabaugh v. LG Elecs. USA, Inc.*, the court rejected as deficient Rule 26(a)(2)(C) disclosures linking mold to the plaintiffs' alleged health issues that consisted "of a single sentence listing the maladies [plaintiffs] have suffered since the water discharge." No. 1:12-cv-01020-RLY-MJD, 2015 WL 1396606, at *3 (S.D. Ind. Mar. 26, 2015).

Defendants' claim that Larson's medical providers failed to disclose the facts and bases to support their conclusions concerning a "plausible method of injury" is easily disposed of. Each provider noted that the nature of the accident created an acceleration-deceleration type injury in Larson's brain. Dr. Perry's disclosure notes that Larson's car spun "around about 200 degrees and causing him to strike his head near the left temporal area", which "likely caused Mr. Larson to suffer an acceleration-deceleration type injury in which the brain collides with its surrounding bony skull." [DE 65-1 at 7.] Similarly, Dr. Cristea and Ms. Kaufman both state: "the likely etiology of his mTBI is coup-contrecoup brain damage suffered in the crash as well as diffuse axonal injury." [*Id*. at 8–10.]

9

Defendants next two challenges are that Larson's disclosures fail to provide a basis for the immediate onset of clinical signs or symptoms and fail to provide any other possible diagnostic criteria that the medical providers used instead of the ACRM mTBI Criteria. I view these challenges as related because they are both grounded in the ACRM mTBI Criteria. Defendants note that diagnosis of a mTBI according to the ACRM mTBI Criteria requires some element of immediate or near immediate (within 72 hours) onset of the applicable signs or symptoms. [DE 65-3 at 8–10.]

Defendants are correct that I do not find the disclosures of Larson's medical providers to provide much detail on the onset of symptoms, but Rule 26(a)(2)(C) does not require Larson's medical providers to have analyzed at length the ACRM mTBI Criteria in their disclosures. Such a requirement would defeat the purpose of Rule 26(a)(2)(C), which is "considerably less extensive than the report required by Rule 26(a)(2)(B)" and would neglect my duty not to require "undue detail." Fed R. Civ. P. 26(a) advisory committee notes to 2010 amendment. Larson's medical providers note the symptoms and criteria that they base their mTBI conclusions on, and that is enough.

Dr. Perry's disclosure notes "cognitive, physical and emotive symptoms" that are consistent with a mTBI, including "impaired memory, cognition and awareness, as well as the chronic headache pain and emotive features." [DE 65-1 at 7–8.] Dr. Cristea notes physical, cognitive, and emotive impairments in Larson that he attributes to a mTBI. [*Id.* at 9.] And Ms. Kaufman SLP notes impairment in "the cognitive, emotive and physical domains", including memory, sleep, concentration, fatigue, and other symptoms. [*Id.* at

10

10–11.] While this may not be the level of detail Defendants prefer, or explicitly track the ACRM mTBI Criteria, the disclosures are sufficient.

Defendants next challenge to Larson's disclosures raises a separate question of whether the medical providers reached their conclusions on causation during treatment. After the addition of Rule 26(a)(2)(C) in December 2010, the Seventh Circuit has continued to reiterate (oddly, I think) the portion of its holding from *Myers v. Nat'l R.R. Passenger Corp. (Amtrack)*, 619 F.3d 729 (7th Cir. 2010) that "'a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment,' is 'required to submit an expert report in accordance with Rule 26(a)(2).'" *Blanton v. RoundPoint Mortg. Servicing Corp.*, 825 Fed.App'x 369, 373 (7th Cir. 2020) (citation omitted); *see also E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013) (citing *Myers*' "holding that doctors who had testified about the causation of the defendant's injuries specifically for litigation purposes were required to submit expert reports."). I recently commented on the difficulties this tortured standard poses and my view that, based on the plain language of Rule 26, the question should simply be whether the expert was "retained or specially employed" for litigation. *See Macchia v. Landline Trans, LLC*, Case No. 2:21-CV-398-PPS, 2024 WL 4751091, at *5 (N.D. Ind. Nov. 12, 2024) (quoting Fed. R. Civ. P. 26(a)(2)(B)).

In all events, Defendants' argument is grossly underdeveloped. Besides a rote cite to the *Myers* standard, Defendants completely fail to apply that standard to Larson's

medical providers. [*See* DE 65 at 7; DE 71 at 6–7.] Defendants' blanket statement that "these disclosures as they relate to causation require an expert report prepared by the proposed expert witness" overstates the admittedly messy legal landscape post-*Myers*. [DE 71 at 7.] As noted above, opinions on causation do not always require a full expert report, only those opinions on causation that were not formed during treatment. In sum, given the perfunctory nature of Defendants' argument and their failure to develop it, it is waived. *See United States v. Parkhurst*, 865 F.3d 509, 524 (7th Cir. 2017); *United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

One more thing as it relates to the causation testimony: Larson did little to aid me on this issue in his response. Perhaps that's because Larson viewed the argument as a throwaway. But as the proponent of the expert testimony, it will be incumbent upon Larson at trial to lay the foundation that his medical providers' "expert opinion was formed in the course of treatment in order for a written report under Rule 26(a)(2)(B) not to be required." *Lopez v. Jeevanandam*, No. 2:10 CV 277, 2013 WL 951179, at *3 (N.D. Ind. Mar. 12, 2013). If such foundation evidence is not offered, then the experts will not be allowed to opine on this issue at trial.

### *Daubert* Methodology Challenge

Defendants' final challenge to the anticipated testimony of Larson's medical providers concerns the reliability of the methodology they applied to reach their conclusions concerning Larson's alleged mTBI. I do not understand Defendants to be

challenging the qualifications or relevance of the medical providers' testimony. Again, Defendants' argument centers on the ACRM mTBI Criteria.

Under *Daubert*, my inquiry must be focused "solely on principles and methodology, not on the conclusions that they generate." 509 U.S. at 595. Larson cites *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838 (7th Cir. 2017) for the proposition that whether Larson's medical providers used the ACRM mTBI Criteria is irrelevant because experts routinely reach different conclusions based on applying different, reliable methodologies to the same set of facts. In *Baugh* the Seventh Circuit examined the methodology of two experts who testified concerning the design of a ladder. *Id.* at 844–47. As relevant here, the Seventh Circuit, in applying the *Daubert* methodology factors, dismissed the notion that the American National Standards Institute's ("ANSI") "stamp of approval, standing alone, is a dispositive consideration" of the reliability of an expert's methodology. *Id.* at 845. The Seventh Circuit took no issue with a second expert's methodology for testing ladder strength and durability that departed from "the ANSI-based standard." *Id.* at 846.

I understand the Seventh Circuit in *Baugh* to counsel against over-reliance on adherence to one set of industry standards or criteria when assessing reliability under *Daubert*. But it does not, however, suggest that analysis of an expert's application of industry standards or criteria is completely irrelevant. *See Clark v. Takata Corp.*, 192 F.3d 750, 759 n. 5 (7th Cir. 1999) (noting that even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon

13

some recognized scientific method"). Thus, Larson's statements go too far to the extent that they argue that his medical experts use or nonuse of the ACRM mTBI Criteria is "of no moment." [*See* DE 69 at 20.] That'll be for a jury to determine. Nevertheless, Larson still must demonstrate that his medical providers applied a reliable methodology. "The critical inquiry is whether there is a connection between the data employed and the opinion offered; it is the opinion connected to existing data only by the *ipse dixit* of the expert . . . that is properly excluded under Rule 702." *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 806 (7th Cir. 2013) (citation omitted).

To address this question, Larson argues that his medical providers established a reliable methodology for their testimony based on their "examination, testing, care and treatment" as well as their "education, training experience and consultation." [DE 69 at 17.] In addition, Larson cites Dr. Cristea's deposition during which he listed additional bases for his opinions, including reports and findings by Dr. Morris and Ms. Kaufman, Larson's medical history, and Dr. Cristea's history and experience of over 30 years working with concussed patients. [*Id*.] In response, Defendants also point to Dr. Cristea's deposition to raise numerous issues with Dr. Cristea's methodology, including that Dr. Cristea did not review the ER or Dr. Perry's medical records and did not know whether Larson struck his head during the accident. [DE 71 at 9.]

Larson cites authority for the proposition that training and experience alone are sufficient bases for expert testimony. *See* Fed. R. Evid. 702 advisory committee notes to 2000 amendment ("[T]he text of Rule 702 expressly contemplates that an expert may be

14

qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony"); *see also U.S. v. Conn*, 297 F.3d 548, 556 (7th Cir. 2002) (recognizing that "genuine expertise may be based on experience or training") (citation omitted); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). The approval of expert testimony based on "experience and training" frequently applies to law enforcement officers, but this concept is not limited to such contexts. *See id.*

The problem with Defendants' argument is that it primarily takes issue with Dr. Cristea's conclusions, which goes to the weight and not the admissibility of his testimony. *Manpower, Inc.*, 732 F.3d at 806 ("Reliability, however, is primarily a question of the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced."). I find Larson's case *Hopey v. Spear* to be instructive. Case No. 13–CV–2220, 2016 WL 4446452 (C.D. Ill. Mar. 15, 2016). In *Hopey*, the court analyzed a *Daubert* methodology challenge to a neuropsychologist's testimony concerning a concussion. *Id.* at *4. The court looked to the expert's history of TBI and concussion consultation as well as assessment and administration of tests accepted in the scientific community to determine the expert's methodology was reliable. *Id.* at *4–*6.

A key distinction in *Hopey* is that the expert in question provided a full report. I don't have the benefit of that here, and Dr. Cristea's disclosure does not state what

15

specific "examination and testing" he performed on Larson. But Defendants had the opportunity to confront Dr. Cristea concerning the standards he applied for the diagnostic criteria of a mTBI. Dr. Cristea explained that there were different criteria for diagnosing mTBIs and warned that many mTBI criteria are "research-tool oriented and not necessarily clinically oriented." [DE 69-1 at 2.] Dr. Cristea then explained his definition of a concussion: "a direct head trauma or an acceleration or rotational event that impacts the brain with or without loss of consciousness." [*Id*. at 3.] Dr. Cristea also explained the signs and symptoms he evaluates to diagnose a concussion: "cognitive impairment, focus, concentration, emotional lability, agitation, bright lights and loud noises, otherwise known as photo and phonophobia, dizziness, headache, burry vision." [*Id*.]

I do not have the benefit of the full record of Dr. Cristea's deposition, but it is clear from the exchanges Larson includes in his response that Dr. Cristea has expertise in the field of mTBIs and concussions and utilized clinically approved methods for evaluating mTBI symptoms. *Baugh* is clear that an expert need not adhere to one specific industry standard when they employ an otherwise acceptable methodology and that multiple accepted standards can exist in the same field. In fact, Dr. Cristea testified that the ACRM mTBI Criteria is not used by everyone and "isn't an end-all, one hundred percent that [providers have] to follow this." [*Id*. at 7–8.] Moreover, as in *Hopey*, my review of Dr. Cristea's credentials and experience diagnosing mTBIs and concussions adds further support to his use of a reliable methodology.

16

Finally, Defendants focus their challenge on Dr. Cristea's methodology, so I also view as waived any underdeveloped methodology challenges to Ms. Kaufman and Dr. Perry. *Parkhurst*, 865 F.3d at 524; *Beavers*, 756 F.3d at 1059.

## Conclusion

For the aforementioned reasons, Defendants' motion to exclude the testimony of Larson's medical providers [DE 65] is DENIED.

**SO ORDERED**.

ENTERED: December 18, 2024.

/s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**